KINGERY v FORD MOTOR COMPANY

FORD MOTOR COMPANY v WELTRONIC COMPANY

Docket Nos. 56156, 56220. Submitted January 19, 1982, at Detroit.—
Decided April 16, 1982.

Charles C. Kingery was awarded workers' compensation benefits
by the Bureau of Workers' Disability Compensation for expo-
sure to atmospheric pollutants. Kingery was previously em-
ployed by Weltronic Company and Ford Motor Company. King-
ery had filed an application for benefits from Ford, Weltronic,
Chubb & Son, Weltronic's workers' compensation insurance
carrier, and the Silicosis and Dust Disease Fund. The adminis-
trative law judge found that Kingery was disabled equally on
the basis of chronic asthmatic bronchitis aggravated to the
point of disability by employment with Ford and Weltronic and
on the basis of pulmonary emphysema related to an extensive
smoking habit. The administrative law judge apportioned the
work-related exposure as 40% Ford and 10% Weltronic. The
administrative law judge dismissed the claim against the Silico-
sis and Dust Disease Fund. Kingery and Ford appealed the
decision to the Workers' Compensation Appeal Board; Kingery
challenged the occupational disease apportionment and Ford
challenged the apportionment of liability between it and Wel-
tronic. The WCAB modified the administrative law judge's
decision to grant Kingery the maximum weekly benefits al-
lowed by not apportioning the disability between smoking and
work-related causes and by apportioning liability between Wel-
tronic and Ford strictly on a "time worked for each employer"
basis (52% Weltronic and 48% Ford). Kingery had earlier
executed an assignment of benefits to the John Hancock Insur-
ance Company given in consideration for the payment of insur-
ance benefits. The WCAB determined that the assignment was

REFERENCES FOR POINTS IN HEADNOTES

[1] 2 Am Jur 2d, Administrative Law §§ 539, 540, 546, 547, 724.
[2] 2 Am Jur 2d, Administrative Law § 724.
   82 Am Jur 2d, Workmen's Compensation §§ 382, 480, 482, 484.
[3] 82 Am Jur 2d, Workmen's Compensation §§ 552, 631.
[4-6] 82 Am Jur 2d, Workmen's Compensation § 409.

valid. The WCAB further held that the two-year-back rule, providing that compensation should not be made for any period earlier than two years preceding the date on which the employee filed an application for benefits, was a nonjurisdictional affirmative defense and since Ford did not raise the defense before the administrative law judge, the defense was waived. Ford and Weltronic both appealed by leave granted. The Court of Appeals consolidated the cases on appeal. *Held:*

1. The WCAB did not err in declining to apply the two-year-back rule. Because the two-year-back rule operates as a statute of limitations, Ford's failure to raise the issue before the administrative law judge constituted a waiver of the issue.

2. The WCAB did not err in holding that Kingery's disability was fully compensable and in not reducing benefits proportionally based on Kingery's smoking habit. The medical evidence clearly established that Kingery's overall pulmonary disease and smoking both contributed to his disability.

3. The WCAB did not err in its apportionment of liability between Ford and Weltronic because liability is to be apportioned strictly on the basis of the amount of time worked for each employer.

4. The decision of the WCAB regarding the assignment of benefits to the John Hancock Insurance Company was proper and does not require clarification.

Affirmed.

1. WORKERS' COMPENSATION — WORKERS' COMPENSATION APPEAL BOARD.

The Workers' Compensation Appeal Board reviews the decision of the administrative law judge *de novo* and may receive additional evidence; however, a *de novo* review does not permit raising a new issue which was not raised before the administrative law judge.

2. WORKERS' COMPENSATION — TWO-YEAR-BACK RULE.

The rule which provided that payments due injured employees under the Worker's Disability Compensation Act shall not be made for any period of time earlier than two years immediately preceding the date on which the employee filed an application for a hearing with the Bureau of Workers' Disability Compensation is similar to a statute of limitations and the period is tolled upon filing; thus, failure to raise the issue before the administrative law judge constitutes a waiver of the issue before appellate bodies (MCL 418.381[2]; MSA 17.237[381]).

3. WORKERS' COMPENSATION — FINDINGS OF FACT — WORKERS' COMPENSATION APPEAL BOARD.

Findings of fact by the Workers' Compensation Appeal Board are conclusive in the absence of fraud if there is any competent evidence in the record to support the findings of fact made by the appeal board; a decision of the appeal board may be reviewed as a question of law where the findings of fact are so sufficiently detailed that an appellate court can separate the facts as found by the board from the law it applied (Const 1963, art 6, § 28; MCL 418.861; MSA 17.237[861]).

4. WORKERS' COMPENSATION — APPORTIONMENT OF LIABILITY BETWEEN EMPLOYERS.

Apportionment of liability for workers' compensation benefits among the last employer and previous employers is to be strictly on a time basis; the burden of the award should be proportionally distributed among the employers in relation to the length of time the employee served his employer (MCL 418.435; MSA 17.237[435]).

5. WORKERS' COMPENSATION — APPORTIONMENT OF LIABILITY BETWEEN EMPLOYERS.

Apportionment of liability among employers for an occupational disease under the Worker's Disability Compensation Act is not to be confined to employers engaged in high-risk industries with substantial likelihood of causing the occupational disease to the exclusion of employers engaged in industries carrying little or no risk of the occupational disease; a prior employer may be held liable for an occupational disease under the apportionment provision of the act where it is shown that the prior employment contributed to, aggravated or accelerated the disease; proof that the disease was actually contracted while working for the prior employer is not required (MCL 418.435; MSA 17.237[435]).

6. WORKERS' COMPENSATION — APPORTIONMENT OF LIABILITY BETWEEN EMPLOYERS.

The Worker's Disability Compensation Act authorizes apportionment of workers' disability compensation benefits among an employee's last employer and previous employers responsible for the employee's disease; the last employer, although required to pay the total compensation for the disease, will be entitled to recover a pro rata share of the total liability from each of the prior employers based upon the amount of time over which the employee worked for each employer (MCL 418.435; MSA 17.237[435]).

*Bockoff & Zamler, P.C.,* for plaintiff.

*Anthony Marchese,* of counsel, and *Conklin, Benham, McLeod, Ducey & Ottaway, P.C.,* for defendant Ford Motor Company.

*Hibbs, Lewis, Finney & Welch, P.C.,* for defendants Weltronic Company and Chubb & Son.

Before: N. J. KAUFMAN, P.J., and V. J. BRENNAN and R. L. TAHVONEN,* JJ.

PER CURIAM. For the sake of this appeal, we are consolidating the above cases. On January 16, 1982, plaintiff-appellee received an award of workers' compensation from the Workers' Compensation Appeal Board (WCAB) with liability apportioned between defendants Ford Motor Company and Weltronic Company (Chubb & Son is Weltronic's workers' compensation insurance carrier). Ford is defendant-appellant in case no. 56156, challenging various aspects of the award to plaintiff. Weltronic is defendant-appellant in case no. 56220, concurring in Ford's arguments against plaintiff but raising a separate issue against Ford. Therefore, both plaintiff and Ford are appellees in that case. This Court granted leave to appeal in both cases on July 14, 1981.

Plaintiff filed a petition for a hearing before the Bureau of Workers' Disability Compensation on February 9, 1977, claiming a disablement from an occupational disease occurring on June 13, 1973, the last day that plaintiff worked. The disablement was from constant exposure to atmospheric pollutants.

A hearing was held before Administrative Law Judge Allan D. Chisholm on June 5, 1978. The

---

* Circuit judge, sitting on the Court of Appeals by assignment.

testimony established that plaintiff was 43 years old and worked at Weltronic for various periods of time between January, 1959, and May, 1967.

Plaintiff worked at Ford for a short time in 1966, and continuously from 1967, when he quit Weltronic, until his disablement in 1973. When he began work at Ford he had no health complaints.

At Weltronic, plaintiff was a drill operator. The atmosphere in which he worked contained fumes and dust. At Ford, plaintiff held various positions, including inspector and as a worker on lathes and grinders. He was exposed to dust and metal particles. Plaintiff had trouble breathing; often coughing when he was working on the lathes. Eventually, he asked his foreman for a job change. Plaintiff went to the medical clinic and was transferred to an inspector's job. Plaintiff continued coughing and was getting weaker. He later volunteered for a different job on the lathes. Later, plaintiff again switched jobs, working as a straightener and balancer until June, 1973. On his last day of work, plaintiff asked for a different job because of his breathing problems and coughing. The foreman gave him a pass for the clinic and plaintiff was told to see a doctor. He never returned to work.

Plaintiff testified that the atmosphere was "about the same" at both Ford and Weltronic.

Plaintiff began receiving insurance benefits from the John Hancock Insurance Company after he stopped working.

Plaintiff had had an extensive cigarette smoking habit since he was about 12 years old which continued until he quit smoking in 1973, the same year that he quit work.

Plaintiff was examined by several doctors and received treatment. The depositions of several doctors were subsequently submitted.

Dr. Urena diagnosed pulmonary lung disease, emphysema and fibrosis. Based upon a hypothetical question, Dr. Urena stated that exposure to dust would aggravate and worsen lung disease. In his opinion, plaintiff was totally disabled for the kind of work he was doing. It was possible that cigarette smoking alone caused plaintiff's fibrosis but the pulmonary emphysema was aggravated by the employment atmosphere.

Dr. Schwartz diagnosed chronic bronchitis and pulmonary emphysema. In his opinion, plaintiff was disabled. He believed that the pulmony dysfunction was causally related to plaintiff's employment at Weltronic and Ford. In his opinion, plaintiff's condition could not be entirely related to cigarette smoking.

Dr. Wu diagnosed asthmatic bronchitis. The asthma and heavy smoking could have led to plaintiff's pulmonary lung pathology. Smoking plus the atmospheric irritants of the workplace contributed to plaintiff's symptoms.

The administrative law judge rendered a decision on December 6, 1978, determining that plaintiff was disabled "A: on the basis of chronic asthmatic bronchitis, aggravated to the point of disability by employment with the defendants, and resulting in an occupational disease and B: on the basis of pulmonary emphysema related to an extensive smoking habit." The administrative law judge apportioned the disability equally between the two causes. He additionally determined, "As to work-related exposure: the primary exposure in time, and more particularly in causative relationship, is 40% Ford Motor, 10% Weltronic." Finally, the Silicosis and Dust Disease Fund, previously added as a defendant, was dismissed since there was no "threat to the industry".

Plaintiff filed an application for review before the WCAB. Ford's motion for delayed appeal was granted by the WCAB on February 2, 1979. On April 30, 1980, the WCAB granted Ford's petition to submit additional evidence, an assignment by plaintiff to the John Hancock Insurance Company given in consideration for payment of benefits.

On January 16, 1981, the WCAB rendered an opinion and order. Plaintiff challenged the occupational disease apportionment and Ford challenged the apportionment of liability between it and Weltronic. The WCAB agreed with both contentions and modified the award.

The WCAB concluded "that plaintiff's occupational lung disease was aggravated and contributed to by both employers as well as the cigarette habit". Weltronic and Ford were to share apportionment liability "in accordance with the time worked for each employer and not any subjective assessment of the relative exposure impact at each location". Based on the number of days worked by Kingery, the apportionment ratio was 52% Weltronic, 48% Ford.

The WCAB concluded that there was "no showing that plaintiff's pulmonary emphysema or chronic asthmatic bronchitis was exclusively contracted and developed in or outside of occupational exposure". Plaintiff had "a fully compensable condition based on one disabling disease entity with various contributing factors in and out of employment". Therefore, plaintiff was entitled to the maximum weekly award. Further, the WCAB determined that the assignment to the John Hancock Insurance Company was enforceable. Also, the two-year-back rule advanced by Ford and Weltronic "being a nonjurisdictional affirmative defense, was not raised prior to appeal" and was waived.

In summary, the administrative law judge's order was modified to grant to plaintiff the maximum amount of benefits by not apportioning the disability causes and apportioning liability between Weltronic and Ford strictly on a time basis. Ford and Weltronic appeal by leave granted.

The first question for our determination is whether the WCAB erred when it declined to apply the two-year-back rule. The WCAB declined to apply the two-year-back rule on the basis that it was a nonjurisdictional affirmative defense and, therefore, waived because it was not raised prior to appeal. The statute here involved, MCL 418.381(2); MSA 17.237(381) [amended, 1980 PA 357, effective January 1, 1982], provided:

"(2) Whenever weekly payments are due an injured employee under this act, such payments shall not be made for any period of time earlier than 2 years immediately preceding the date on which the employee filed application for hearing with the bureau."

Thus, if the statute is applied, plaintiff would not be entitled to any benefits prior to February 9, 1975, two years prior to the filing of his petition. He would lose the benefits he received from June 13, 1973, to February 9, 1975.

Defendants contend that because a general claim of review was filed with the WCAB and because review is *de novo,* any issues could be raised. However, we agree with plaintiff that the rule is akin to a statute of limitations and was waived.

The WCAB reviews the administrative law judge's decision *de novo* and may receive additional evidence. *Kostamo v Marquette Iron Mining Co,* 405 Mich 105, 135; 274 NW2d 411 (1979). As

stated in *Carter v Detroit Board of Education,* 66 Mich App 128, 130; 238 NW2d 419 (1975):

"The WCAB may hear such additional evidence as in its discretion it may allow. MCL 418.859; MSA 17.237(859). Further, the WCAB is not bound by the findings of fact made by the referee, but, rather, the review of the referee's decision by the WCAB is *de novo. Herrala v Jones & Laughlin Steel Corp,* 43 Mich App 154, 157; 203 NW2d 752 (1972)."

However, as plaintiff contends, the *de novo* review is of the decision already made. Additional evidence may be taken on proper issues in that review. A *de novo* review does not permit raising a new issue, similar to an alleged defense of the statute of limitations, which was not presented earlier.

Ford's reliance on *Goodman v Bay Castings Division of Gulf & Western Industries,* 49 Mich App 611, 625-626; 212 NW2d 799 (1973), is misplaced. Rather, dispositive of this issue is *Kleinschrodt v General Motors Corp,* 402 Mich 381; 263 NW2d 246 (1978), where the Court considered the one-year-back rule provision, MCL 418.833; MSA 17.237(833). That provision precludes compensation for any period more than one year prior to the filing of an application "for further compensation". The two-year-back rule is similar in precluding benefits prior to two years before an application for initial benefits. In *Kleinschrodt,* the defendant's appeal to the WCAB was limited to the issue of whether the plaintiff had lost the industrial use of his hand. The WCAB invoked *sua sponte* the one-year-back rule to deny benefits. The Court concluded:

"We are of the opinion that the one-year-back provi-

sion is a defense, akin to the statute of limitations, which can be waived. It is not jurisdictional.

"Defendant outlined the nature of its arguments before the appeal board in the statement of facts of the brief submitted to that body:

" 'The only issue before the referee and the only issue raised by this appeal is: Is the plaintiff's right hand useless for any type of work whatsoever?'

"There was no oral argument. Under these circumstances, we hold that defendant waived the defense of the one-year-back rule by failing to raise it before the appeal board." (Footnote omitted.) *Kleinschrodt, supra,* 384.

Although *Kleinschrodt* can be distinguished from the present case because the WCAB raised *sua sponte* the issue while here Ford raised the issue in its delayed application for review, we find that the *Kleinschrodt* case is applicable. A totally new issue, not decided by the administrative law judge, is akin to a statute of limitations and cannot be raised either by request or *sua sponte.* We consider, by analogy, that while this Court reviews cases in equity *de novo,* we will not review an issue first raised on appeal. Therefore, we find that becasue the two-year-back rule operates as a statute of limitations, *Bordas v Detroit General Hospital,* 100 Mich App 31, 33; 298 NW2d 655 (1980), as in *Kleinschrodt,* Ford's failure to raise the issue before the administrative law judge constituted a waiver. The WCAB did not err in declining to apply the two-year-back rule.

The next issue for our determination is whether there was error in the WCAB's award where non-work causes were not apportioned into the award. The WCAB modified the administrative law judge's decision by determining that MCL 418.431; MSA 17.237(431) was inapplicable. The WCAB noted that the defendants had the burden of prov-

ing any right to § 431 apportionment between occupational and nonoccupational disease and concluded that there had been no showing that plaintiff's condition was exclusively contracted and developed in or outside of occupational exposure. Plaintiff's condition was "contributed to jointly by employment and cigarettes".

The relevant portion of the statute provides:

"Where an occupational disease is aggravated by any other disease or infirmity, not itself compensable, or where disability or death from any other cause, not itself compensable, is aggravated, prolonged, accelerated or in any way contributed to by an occupational disease, the compensation payable shall be a proportion only of the compensation that would be payable if the occupational disease were the sole cause of the disability or death as such occupational disease, as a causative factor, bearing to all the causes of such disability or death, such reduction in compensation to be effected by reducing the number of weekly payments or the amounts of such payments, as under the circumstances of the particular case may be for the best interest of the claimant or claimants." MCL 418.431; MSA 17.237(431).

In discussing the applicability of this statute, it is important to note the limited standard of review for findings of fact by the WCAB. As stated in *Butler v Dura Corp,* 105 Mich App 508, 512; 307 NW2d 83 (1981):

"With respect to the WCAB's factual findings, they are conclusive in the absence of fraud, if there is any competent evidence in the record to support the findings of fact made by the appeal board. A decision of the WCAB may be reviewed as a question of law where the findings of fact are sufficiently detailed so that an appellate court can separate the facts the WCAB found from the law it applied." (Citations omitted.)

See, also, *Derwinski v Eureka Tire Co,* 407 Mich 469, 481; 286 NW2d 672 (1979), *Bush v Brunswick Corp,* 92 Mich App 686; 285 NW2d 420 (1979), *Foster v Detroit,* 56 Mich App 644, 649; 224 NW2d 714 (1974).

The WCAB concluded as a matter of fact, as follows:

"We conclude that plaintiff's occupational lung disease was aggravated and contributed to by both employers as well as the cigarette habit.

\* \* \*

"There has been no showing that plaintiff's pulmonary emphysema or chronic asthmatic bronchitis was exclusively contracted and developed in or outside of occupational exposure. The medical evidence is conclusively persuasive that plaintiff's pulmonary pathology, regardless of the specific diagnosis presented, was contributed to jointly by employment and cigarettes."

Relying upon *Phillips v Sears, Roebuck & Co,* 406 Mich 889; 276 NW2d 28 (1979), and example B in *Johnson v Lakey Foundry Corp,* 1976 WCABO 2097, the WCAB determined that § 431 was inapplicable and that plaintiff was entitled to full compensation. We agree with the WCAB conclusions.

In *Phillips,* in lieu of leave to appeal, the Supreme Court reversed this Court's unpublished per curiam decision and remanded to the WCAB for reinstatement of its original award of benefits. The Supreme Court determined that this Court erred in ordering an apportionment under § 431. The facts of that case are not contained in the per curiam opinion but the WCAB opinion in that case indicates that it involved a similar situation of a pathology from smoking and nonsmoking causes. In that event, the holding of the *Phillips* case would preclude apportionment in the present case.

*Johnson, supra,* contained an extended discussion of § 431 by the WCAB. In that case, the plaintiff had an occupational pulmonary disease and a nonoccupationally caused heart disease. Based on the medical testimony, the WCAB concluded that the plaintiff's disability was "an inextricably-mixed one". However, because the pulmonary problems were disabling without the aggravation of cardiac problems and because the cardiac diseases were significantly aggravated by the pulmonary disease, the WCAB found the occupational portion of the combined disability to be 75% and the nonoccupational portion to be 25%.

The WCAB then analyzed § 431 in a schematic diagram. Example A was the fully compensable situation of work causes and conditions leading to a disease leading to a disability. Example B was the fully compensable situation of combined work causes and non-work causes leading to a disease leading to a disability. Example C was the fully compensable situation of independent disabilities resulting from different diseases separately caused by work or non-work causes.

The WCAB applied example D-1 to the facts in *Johnson:* when work exposure results in a disease which is aggravated by a separate nonoccupational disease to create a combined and interrelated disability. In that event, § 431 was applicable and apportionment was ordered.

The WCAB in the present case followed example B, which was explained in *Johnson:*

"Situation 'B' describes the classic case where multiple *exposures* or *causes,* some compensable and others not compensable *(e.g.,* personal smoking habits and foundry dust), work together to cause a *disease (e.g.,* bronchitis), and that disease results in a *disability.* This

situation, too, is fully compensable." *Johnson, supra,* 2105.

In the present case, the WCAB concluded that employment conditions and cigarette smoking jointly contributed to plaintiff's pulmonary pathology and that there was no showing that either emphysema or bronchitis was contracted solely by work or non-work causes. Because example B was applicable and this Court is bound by the WCAB's factual determinations, we find that plaintiff's disability was fully compensable.

Defendant Ford argues that example D-1 applies in the present case because two separate disease processes were involved. Arguably, there were two separate diseases: pulmony emphysema and chronic bronchitis. However, the medical evidence clearly established that plaintiff's overall pulmonary disease and smoking both contributed to his disability. There was a causal relationship. Testimony did not establish that smoking aggravated an occupational disease to the point of a disability or that a disability from smoking was aggravated by the occupational disease. The joint causes resulted in the disability. Therefore, there was competent evidence to support the WCAB's factual finding of a jointly caused disability and that finding is conclusive. We conclude that the WCAB properly refused to reduce benefits proportionally under § 431.

Another question raised on this appeal is whether the WCAB erred in apportioning liability between the employers strictly on a time basis rather than on the relative causation and exposure impact at each location.

The WCAB concluded that both employers and the cigarette habit contributed to plaintiff's dis-

ability. The WCAB applied MCL 418.435; MSA 17.237(435) to apportion liability between the employers "in accordance with time worked for each employer and not any subjective assessment of the relative exposure impact at each location". Therefore, based upon the amount of days worked for each employer, the WCAB apportioned the liability as 52% Weltronic and 48% Ford.

The statute involved, applicable at the time of plaintiff's disability,[1] provided in pertinent part:

"The hearing referee shall enter an order determining liability for compensation as between the employee and the last employer. The hearing referee shall apportion liability for compensation among the several employers in proportion to the time that the employee was employed in the service of each employer in the employment to the nature of which the disease was due and in which it was contracted and shall enter a separate order in favor of the last employer and against prior employers for their proportionate share of liability, which order may be enforced in the same manner as an award for compensation." MCL 418.435; MSA 17.237(435).

A review of the case law interpreting the statute indicates that apportionment of liability between employers is to be strictly on a time basis. In *Derwinski v Ereka Tire Co,* 407 Mich 469, 489; 286 NW2d 672 (1979), the Court notes:

"The drafters of the Worker's Disability Compensa-

---

[1] The statute was amended, 1980 PA 357, effective January 1, 1981, to provide in part:

"The total compensation due shall be recoverable from the employer who last employed the employee in the employment to the nature of which the disease was due and in which it was contracted. If any dispute or controversy arises as to the payment of compensation or as to liability for the compensation, the employee shall make claim upon the last employer only and apply for a hearing against the last employer only."

tion Act clearly intended that similar multiple employments, through which an occupational disease finally progressed to a compensable disability, should share proportionately in the payment of benefits."

The relative exposure risk of the various employers is not determinative of the apportionment. In *Mundy v Detroit Grey Iron Foundry,* 57 Mich App 331, 335-336; 225 NW2d 754 (1975), the Court noted:

"Apportionment under the statute is not to be confined to employers engaged in high-risk industries with similar substantial likelihood of the disease to the exclusion of employers, such as Hercules here, engaged in industries carrying little or no risk of silicosis. Although the nature of the exposure with a prior employer may be different, and in fact less hazardous to the point of being totally free of silica exposure, nevertheless, the prior employer can be held liable for an apportioned share of compensation payments where that exposure aggravates or accelerates the disease."

Further, in *Pentrich v Dostal Foundries,* 28 Mich App 263, 266; 184 NW2d 316 (1970), in construing the predecessor to § 435, the Court stated:

"Furthermore, the statute itself mandates that the burden of the award be proportionally distributed among the employers in relation to the length of time the employee served his employer."

In *Hughes v Lakey Foundry Corp,* 91 Mich App 170; 284 NW2d 135 (1979), the Court notes in dicta:

"It is sufficient, for purposes of aportionment, for the prior employment to have contributed to the disability, even though the employee may not have been subjected

to identically disabling conditions. *Mundy v Detroit Grey Iron Foundry,* 57 Mich App 331; 225 NW2d 754 (1975). In our view, differences in severity of the work conditions between employers have relevance only in calculating the proportion of each employer's contribution to the disability." *Hughes, supra,* 176.

Perhaps that statement could be construed in support of Weltronic's position in the present case that apportionment be based on the nature and degree of exposure. However, in *Hughes,* the Court in fact apportioned liability based upon the total time worked at each of the two employers as a percentage of plaintiff's total years worked. Therefore, the court apportioned liability strictly on a time basis.

Finally, most recently, in *Hudson v Jackson Plating Co,* 105 Mich App 572, 578, fn 1; 307 NW2d 96 (1981), the Court stated:

"Additionally, we emphasize that a last employer will only be held liable to a pro rata share of the total liability, based upon the amount of time over which the employee worked for him. MCL 418.435; MSA 17.237(435)."

Thus, it is clear that the liability is to be apportioned strictly on a time basis and the WCAB apportionment between Weltronic and Ford was correct.

Finally, plaintiff Kingery raises the issue in his brief of whether the WCAB's decision enforcing the assignment by him to the John Hancock Insurance Company, Ford's insurer, should be clarified.

The WCAB determined that the assignment by plaintiff to the John Hancock Insurance Company was enforceable under MCL 418.821(2); MSA 17.237(821)(2). Appropriate credit was granted to each defendant. Subsection (1) of the statute pro-

vides that a compensation payment shall not be assignable. However, subsection (2) provides in pertinent part:

"(2) This section shall not apply to or affect the validity of an assignment made to an insurance company making an advance or payment to an employee under a group disability or group hospitalization insurance policy which provides that benefits shall not be payable under the policy for a period of disability or hospitalization resulting from accidental bodily injury or sickness arising out of or in the course of employment."

We find that the WCAB's decision regarding the assignment does not need clarification.

The decision of the WCAB is affirmed.