HOWARD v GENERAL MOTORS CORPORATION

Docket No. 68670. Submitted November 9, 1983, at Lansing.—Decided March 6, 1984. Leave to appeal applied for.

Harry Howard applied for, and received, an award of workers' compensation benefits from the Bureau of Workers' Disability Compensation. The hearing officer determined that Howard was disabled by the aggravation of a back condition causally related to his employment with the Fisher Body Division of General Motors Corporation. The Workers' Compensation Appeal Board affirmed the hearing officer's determination but modified the award to include 12% interest on the accrued, but unpaid compensation benefits due the plaintiff. General Motors appealed by leave granted. *Held:*

There was evidence sufficient to sustain the WCAB's findings of fact. Howard testified that the repetitive climbing and bending associated with his crane operator job aggravated his pain to the point at which he could no longer carry out his duties. The WCAB did not err in disregarding Howard's intervening nonwork-related heart disease because an independent, intervening event resulting in a new disabling medical problem does not alone justify the denial of benefits for a continuing work-related injury. Although Howard admitted to his insurer that his back problems were not work-related, the WCAB is not obligated to give pre-emptive weight to such an admission. The WCAB did not err in holding that GM waived the two-year-back rule of the Worker's Disability Compensation Act by failing to raise it before the hearing officer. The record is devoid of any compelling explanation for GM's failure to raise the applicability of the rule. The WCAB did not err in awarding interest at 12% per annum on accrued benefits due prior to January 1, 1982.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1] 82 Am Jur 2d, Workmen's Compensation § 552.
[2] 82 Am Jur 2d, Workmen's Compensation § 405.
[3] 82 Am Jur 2d, Workmen's Compensation § 523 *et seq.*
[4] 82 Am Jur 2d, Workmen's Compensation § 625.
[5] 82 Am Jur 2d, Workmen's Compensation § 579.

1. WORKERS' COMPENSATION — FINDINGS OF FACT.

Findings of fact made by the Workers' Compensation Appeal Board are conclusive, absent fraud, if they are supported by any competent evidence (Const 1963, art 6, § 28).

2. WORKERS' COMPENSATION — INDEPENDENT INTERVENING EVENTS.

An independent intervening event resulting in a new disabling medical problem does not alone justify the denial of workers' compensation benefits for a continuing work-related injury.

3. WORKERS' COMPENSATION — EVIDENCE — ADMISSIONS.

The Workers' Compensation Appeal Board may properly consider a claimant's representations to his insurer, but the board is not obligated to give pre-emptive weight to such representations.

4. WORKERS' COMPENSATION — TWO-YEAR-BACK RULE.

The Workers' Compensation Appeal Board has discretion to go beyond the record made before the hearing referee; however, the WCAB is not required to consider issues raised before it for the first time, including consideration of the rule which provides that payments due injured employees under the Worker's Disability Compensation Act shall not be made for any period of time earlier than two years immediately preceding the date on which the employee filed an application for a hearing with the Bureau of Workers' Disability Compensation (MCL 418.381[2]; MSA 17.237[381][2]).

5. WORKERS' COMPENSATION — INTEREST.

The amendment to the Worker's Disability Compensation Act providing that interest on the compensation shall be paid at the rate of 12% per annum from the date each payment was due, until paid, which became effective January 1, 1982, requires that for all awards made after January 1, 1982, the 12% interest rate should be computed by referring to the date the payment became due without regard to the fact that payment may have become due prior to January 1, 1982 (MCL 418.801, subds [1], [5]; MSA 17.237[801], subds [1], [5]).

*Rosenberg & Vigiletti, P.C.* (by *Susan A. McCrandall),* for plaintiff.

*Munroe & Nobach, P.C.* (by *Cameron C. McComb),* for defendant.

Before: HOOD, P.J., and R. B. BURNS and R. M. SHUSTER,* JJ.

PER CURIAM. Defendant appeals by leave granted from an order of the Workers' Compensation Appeal Board (WCAB), affirming the hearing officer's determination that plaintiff was disabled by the aggravation of a back condition causally related to his employment. The WCAB modified the award as rendered by the hearing officer to include 12% interest on the accrued, but unpaid, compensation benefits due to the plaintiff. Defendant also appeals from this portion of the WCAB's order.

Plaintiff commenced his employment with defendant at its Fisher Body plant in Grand Blanc on April 23, 1953, and, in October, 1956, he began to work as a die setter. Plaintiff described his duties as a die setter as being extremely strenuous. The job included prying heavy dies with six-foot bars. Sometime during the early 1960's, plaintiff was pulling a bar and moving a die into place when he felt a snap and pull in his back. He went to the first aid station, where he was given heat treatments, and he did not miss any time from work because of the injury.

Plaintiff claimed that following the injury he continued to have pain in his back. The pain became so intense that, in 1963, he was forced to have surgery. Plaintiff recuperated for six months before returning to his job as a die setter on October 18, 1963. The surgery was successful to the extent that plaintiff did not require additional time off from work because of the injury. Plaintiff, however, claimed that the pain continued.

During cross-examination, plaintiff explained

* Circuit judge, sitting on the Court of Appeals by assignment.

that his health insurer had paid some of his surgical bills and that he had paid the balance. The defense entered into evidence a letter written by plaintiff to his health insurer which stated that his back trouble was not related to his employment. Plaintiff identified the writing and signature as his own, but stated that he did not remember writing the letter.

In March, 1967, plaintiff requested a transfer to the position of crane operator because he believed that this job would be less injurious than working as a die setter. This request was granted. Plaintiff stated that in order to get into the crane he had to climb a forty-foot ladder. He estimated that he climbed up and down the ladder 12 to 15 times a day and that the pulling involved in climbing the ladder put a strain on his back. Moreover, in order to get signals from the workers on the ground, plaintiff had to stand up and lean over the cab which placed additional stress on his back.

Roland Willis, who supervised plaintiff at the Fisher Body plant, contradicted plaintiff's testimony as to the operation of the cranes. Willis stated that plaintiff would operate only one or two cranes a day, necessitating only a limited amount of climbing. In addition, the crane could be turned 180 degrees, enabling the operator to see down from the side of the cab without leaning out over the front of the machine. Willis further testified that plaintiff was only in the cabs about four hours a day and that the only reason for him to stand up was to stretch his legs if they got tired.

On December 5, 1966, plaintiff again injured himself when he slipped on icy pavement in the plant's parking lot. Plaintiff fell on his tailbone and experienced shooting pains in his hip and right leg. Plaintiff went to the plant's first aid

station and informed them of the slippery conditions in the parking lot. Although plaintiff claimed that he continued to have pain in his right leg because of the accident, he admitted on cross-examination that his right leg had been previously injured during World War II. At the time of the hearing, plaintiff was receiving compensation from the government for the injuries to his right leg. Following the slip and fall, GMC arranged for plaintiff to see Dr. Harris about the resulting pain. The plant's records reveal that on December 9, 1966, plaintiff reported that he was "much improved" and requested that the appointment be cancelled. At the hearing, plaintiff denied that he had ever made such a request.

Plaintiff did not receive any further medical treatment until July, 1973, when he suffered a ruptured appendix. During plaintiff's 90-day convalescence following surgery, he experienced an exacerbation of the pain in his back and leg. In addition, plaintiff began feeling brief transient pains in his chest. Notwithstanding his physical infirmities, plaintiff returned to work as a crane operator. He remained on the job for about a month, but was forced to leave because of the pain in his leg. Plaintiff went back to Dr. Herzog, the physician who originally operated on plaintiff's back, for an examination. Dr. Herzog took x-rays and conducted a myelogram, ultimately determining that plaintiff required additional surgery on his lower back. Plaintiff testified that, even after this surgery, the pain in his back was too intense to allow him to continue as a crane operator. Plaintiff admitted, however, that his intervening heart disease also prevented him from returning to work.

Following plaintiff's last day of work at General

Motors on July 13, 1973, plaintiff was examined by several physicians. Dr. Van Brocklin concluded that plaintiff could return to work provided he was placed in a "sit-down" job. Van Brocklin did not believe that it was possible for plaintiff to continue as a crane operator because climbing the ladder might affect plaintiff's heart condition. Van Brocklin noted that there might also be some pain in plaintiff's back during the climbing.

Dr. Irving Young's examination revealed that plaintiff suffered no limitation of movement because of back pain. The x-rays showed a narrowing of the disc space and anterior spurring that might have been precipitated by the strenuous nature of plaintiff's work in the early 1960's. Young found no evidence that plaintiff's back injury was further aggravated by his employment.

Dr. Leon Friedman determined that plaintiff could not participate in significant physical activity because of his advanced cardiovascular disease. Friedman believed, however, that plaintiff could perform satisfactorily in a sedentary or semi-sedentary job. Although Dr. Friedman's examination focused on plaintiff's heart ailment, the doctor noted that plaintiff continued to complain of back pain.

Although plaintiff originally claimed that his employment caused aggravation to his back, appendix, heart, and lungs, he deleted all claims except those relating to his back. The disability award was accordingly based solely on the aggravation of his back condition.

We address defendant's second claim on appeal first: namely, that the evidence on the record did not support the WCAB's conclusion that plaintiff suffered an occupational injury on his last day of work in July, 1973. We address this issue first

because, were we to accept this claim, we would not have to address defendant's other claims.

The WCAB acts as a trier of fact and, by state constitutional mandate, Const 1963, art 6, § 28, the WCAB's findings of fact may not be disturbed, absent proof of fraud, if there is any competent evidence to support them. *Derwinski v Eureka Tire Co,* 407 Mich 469, 481-482; 286 NW2d 672 (1979); *Bullard v Titus Construction Co,* 118 Mich App 631, 637; 325 NW2d 521 (1982).

In the instant case, plaintiff reported that he sustained his first work-related back injury in the early 1960's. This injury was aggravated by a fall on the pavement of his employer's parking lot in 1966. Dr. Van Brocklin concluded that plaintiff's continuing back problems and associated pain were the result of work-related injuries suffered by plaintiff. Dr. Young believed that at least the work plaintiff performed in the early 1960's may have precipitated his original back problems. Dr. Van Brocklin explicitly opined that plaintiff's back problems rendered him unable to perform anything other than sedentary work. Plaintiff, himself, testified that the repetitive climbing and bending associated with his crane operator's job aggravated his pain to the point at which he could no longer carry out his duties. This evidence is sufficient to sustain the WCAB's findings of fact.

Defendant also argues that the WCAB erred because plaintiff's intervening non-work-related heart disease, if anything, precluded his continued employment. However, an independent, intervening event resulting in a new disabling medical problem does not alone justify the denial of benefits for a continuing work-related injury. *Powell v Caslo Nelmor Corp,* 406 Mich 332, 354-355; 279 NW2d 769 (1979).

Concerning the finding of a work-related disability, defendant finally argues that, because plaintiff informed his health insurer in 1963 that his back problems were not work-related, it was error for the WCAB not to deny benefits. We disagree. While a plaintiff's representations to his insurer may be (and, here, clearly were) considered by the WCAB, the WCAB is not obligated to give preemptive weight to such an admission.

Error is also assigned to the WCAB's holding that defendant waived the so-called two-year-back rule embodied in § 381 of the Worker's Disability Compensation Act, MCL 418.381(2); MSA 17.237(381)(2), by failing to raise it as an affirmative defense before the hearing officer. Section 381(2) provides:

"If any compensation is sought under this act, payment shall not be made for any period of time earlier than 2 years immediately preceding the date on which the employee filed an application for hearing with the bureau."

Under the facts of this case, application of the two-year-back rule would limit defendant's liability for compensation benefits to the period subsequent to June 23, 1975.

In *Kingery v Ford Motor Co,* 116 Mich App 606; 323 NW2d 318 (1982), this Court, relying on *Kleinschrodt v General Motors Corp,* 402 Mich 381; 263 NW2d 246 (1978), determined that the defendant had waived application of the two-year-back rule because it had not raised the issue of the rule's applicability before the hearing officer. In *Kingery,* as here, this issue was first raised before the WCAB. Pursuant to MCL 418.859; MSA 17.237(859) and General Rule 20 of the Bureau of Workers' Disability Compensation, 1979 AC, R

408.50, the WCAB has discretion to go beyond the record made before the hearing officer; however, the WCAB is not required to consider issues raised for the first time before it. On the facts of this case, where the record is devoid of any compelling explanation for defendant's failure to raise the applicability of the two-year-back rule before the hearing officer, we find no abuse of the WCAB's discretion.

Defendant's final claim is that the WCAB erred in awarding interest at 12% per annum on accrued benefits due prior to January 1, 1982. We reject this contention on the authority of *Selk v Detroit Plastic Products,* 120 Mich App 135; 328 NW2d 15 (1982), *lv gtd* 417 Mich 934 (1983).

Affirmed. Plaintiff-appellee may tax costs.