FRANKS v WHITE PINE COPPER DIVISION

CHAMBERS v GENERAL MOTORS CORPORATION

GOMEZ v GENERAL MOTORS CORPORATION

Docket Nos. 70901, 71719, 71921. Argued January 8, 1985 (Calendar
  Nos. 1-3).—Decided October 7, 1985. Rehearings denied in
  *Chambers* and *Gomez,* 424 Mich 1202.

  Larry J. Franks filed a petition for workers' compensation alleg-
  ing total disability as a result of a work-related injury to his
  right hand in 1971 while employed by White Pine Copper
  Division of Copper Range Company. A hearing referee found
  him to be partially disabled and awarded benefits, commencing
  August 2, 1977. The Workers' Compensation Appeal Board
  affirmed the finding of disability and denied White Pine a setoff
  for unemployment benefits received by Franks for the same
  period. The board additionally directed that benefits be paid
  from the time Franks returned to work in 1971, and held that
  White Pine had waived the defense of the two-year-back rule
  which would have barred any payments prior to July 26, 1976.
  The Court of Appeals, D. F. WALSH, P.J., and ALLEN and M. F.
  CAVANAGH, JJ., affirmed (Docket No. 63220). The defendant
  appeals.

  John H. Chambers retired from General Motors Corporation in
  1974 and began receiving retirement benefits. Shortly thereaf-
  ter, he filed a petition for workers' compensation, alleging that

---

REFERENCES FOR POINTS IN HEADNOTES

[1-3, 5] Am Jur 2d, Workmen's Compensation §§ 365, 366.

  Right of health or accident insurer to intervene in worker's com-
  pensation proceeding to recover benefits previously paid to claim-
  ant or beneficiary. 38 ALR4th 355.

[3] Am Jur 2d, Unemployment Compensation § 90.

  Right to unemployment compensation as affected by receipt of
  Social Security benefits. 56 ALR3d 552.

  Right to unemployment compensation as affected by receipt of
  pension. 56 ALR3d 520.

[4, 6] Am Jur 2d, Workmen's Compensation § 613 *et seq.*

  Right of Director of Office of Workers' Compensation Programs to
  intervene in proceeding to review decision of Benefits Review
  Board. 48 ALR Fed 839.

[5] Am Jur 2d, Workmen's Compensation § 338 *et seq.*

.

during his employment at General Motors he developed disabling pulmonary and heart diseases. A hearing referee found that Chambers was entitled to benefits as of October 1, 1974. The Workers' Compensation Appeal Board affirmed. In 1982, General Motors notified Chambers that it would begin coordinating workers' compensation benefits with other benefits he received as provided by § 354 of the workers' compensation act. A hearing referee ruled that the setoff provisions did not apply because the injuries occurred prior to the effective date of § 354, and the board affirmed. The Court of Appeals, R. M. MAHER, P.J., and J. H. GILLIS and WAHLS, JJ., denied the defendant's application for leave to appeal (Docket No. 67973). The defendant appeals.

Anacleto Gomez was injured on May 31, 1979. A hearing referee found him to be partially disabled and awarded workers' compensation benefits. In addition, Gomez received supplemental compensation and pension benefits. As in *Chambers,* General Motors notified Gomez of its intention to coordinate his benefits. A hearing referee ruled that the setoff provisions of § 354 did not apply because the injuries occurred prior to the effective date of § 354, and the board affirmed. The Court of Appeals, DANHOF, C.J., and BRONSON and CYNAR, JJ., denied the defendant's application for leave to appeal (Docket No. 67915). The defendant appeals.

In *Chambers* and *Gomez* the board also ruled that an employer is required to petition for and prevail at an evidentiary hearing before the Bureau of Workers' Compensation prior to coordinating benefits under § 354.

In an opinion by Justice BOYLE, joined by Chief Justice WILLIAMS, and Justices LEVIN, BRICKLEY, and CAVANAGH, and by Justices RYAN and RILEY in *Chambers* and *Gomez,* but concurring only in the result in *Franks,* the Supreme Court *held:*

Section 354 of 1981 PA 203 may be applied to offset workers' compensation liability to workers injured prior to its effective date; an employer may reduce the amount of workers' compensation benefits payable after March 31, 1982, for periods of disability after that date by deducting other employer-financed benefits such as social security, disability, and pension benefits as specified in § 354 which are being received by an injured worker and are attributable to the same compensable periods after March 31, 1982. The employer need not file a petition with the Bureau of Workers' Compensation and prevail at an evidentiary hearing before it is entitled to coordinate benefits. It must only report to the bureau the credit against or reduc-

tion in workers' compensation benefits and provide proof of the basis for the reduction or credit if requested by the bureau.

Under the provisions of § 358 of 1980 PA 357, unemployment compensation paid for weekly periods before January 1, 1982, is not deductible from workers' compensation benefits payable for the identical weekly periods, but weekly payments of workers' compensation that become due on or after January 1, 1982, are to be reduced by unemployment compensation paid or payable for the same periods, although the worker was injured before that date.

· In *Franks,* the board clearly erred in holding that the employer had waived a defense based on the two-year-back rule because the decision before the board on review did not involve benefits for any time period which would require invoking the rule and the claimant had not sought benefits for a longer period.

1. Sections 354 and 358 of the workers' compensation act, which were enacted as parts of a series of reforms of the workers' compensation laws, became effective in 1982 and provide for offset against and coordination of workers' compensation benefits. The workers in these cases were injured prior to the effective dates of the sections. In *Chambers* and *Gomez,* the employer applied § 354 to reduce its obligation to pay workers' compensation on the basis of periods of liability after March 31, 1982; in *Franks,* the employer sought to reduce its liability by the amount of unemployment compensation received by the worker during earlier periods also covered by workers' compensation.

2. Section 354 of the workers' compensation act clearly and unambiguously provides for coordination of workers' compensation benefits and other benefits specified in the section for all compensable periods subsequent to its effective date, March 31, 1982, regardless of when an injury occurs. Application of the section is not limited to cases in which workers' compensation benefits are paid to a worker for injuries received after March 31, 1982; nor does it proscribe application where payments are made for injuries received prior to that date. In the absence of express language of limitation, the section is generally applicable to all payments made after its effective date, including payments to compensate for injuries, such as those in *Chambers* and *Gomez,* which occurred prior to the effective date. While the section may permit coordination where the injury occurred prior to the effective date, only payments received and attributable to periods after the effective date may be coordinated. The rationale for providing for coordination, to eliminate

duplication of benefits for injured workers and thus prevent a disincentive to work, applies regardless of when an injury occurred.

3. An employer need not file a petition and present proofs at an evidentiary hearing before the Bureau of Workers' Compensation prior to coordinating an employee's benefits. The employer need only notify the bureau of the amount of the credit against or reduction in benefits and, upon request, furnish proof of the basis for the offset. The potential for error by the employer is minimal, and the due process rights of the claimant are protected by provision for a hearing after the offset occurs.

4. Section 358 of the workers' compensation act provides that workers' compensation benefits payable to an injured worker must be reduced by the entire amount of unemployment compensation paid or payable to the worker for identical periods of time and chargeable to the same employer. The provision does not constitute a clear legislative statement as to retroactivity or to the period of time intended to be covered by the statute. Although it supplies some limitations as to when unemployment benefits qualify for the setoff, it says nothing about the period of time to which the setoff attaches. Generally, statutes are presumed to operate prospectively unless the contrary intent is clearly manifested. Although a statute is not regarded as operating retrospectively merely because it relates to an antecedent event, application of the provisions of § 358 to impose a disability, in the form of a setoff, upon the amount of workers' compensation time periods prior to the effective date of the legislation in question is purely retroactive. Statutes which operate in furtherance of a remedy or mode of procedure and which neither create new rights nor destroy, enlarge, or diminish existing rights are generally held to operate retrospectively unless a contrary legislative intention is manifested. Section 358 may not be regarded as wholly procedural in character. Its effect, if applied, would result in taking from the plaintiff the substantive right to receipt of compensation payments which existed prior to its enactment. Thus, only a clear statement of legislative intent would justify retroactive application. Nor should § 358 be applied retroactively as being remedial. While § 358 is "remedial" in the sense that it was adopted to effect a reform which would correct certain injustice in the system, retroactive application would also significantly and detrimentally affect the substantive right of certain injured employees to receipt of workers' compensation. In addition, such a construction would appear to reward employers who are

found to have incorrectly withheld payment of workers' compensation benefits and correspondingly penalize those who timely made such payments prior to January 1, 1982. There is nothing in the provision to overcome the presumption that only prospective operation was intended. Thus, unemployment compensation paid for weekly periods before the January 1, 1982 effective date of § 358 is not deductible from workers' compensation benefits payable for the identical pre-1982 periods; however, weekly payments of workers' compensation that become due on or after January 1, 1982, are to be reduced by unemployment compensation benefits paid or payable for the same periods.

5. Under the workers' compensation act, compensation may not be paid for periods of time more than two years prior to the date on which an injured worker applies for a hearing with the bureau. In *Franks,* the appeal board erred in holding that the employer had waived the two-year-back rule as a defense, thereby permitting the liability for benefits to extend to 1971. The initial order of the hearing referee, did not require payment of disability benefits for periods prior to 1977, and the claimant did not apply for review of the commencement date; thus there was no reason for the employer to raise the defense on appeal. Only after the appeal board modified the referee's decision did the date on which benefits commenced exceed the two-year limit. A defendant is not required to raise possible affirmative defenses or risk waiving them unless a claim is presented to which a defense is applicable. Under the circumstances of the case, the employer could not have appealed a ruling on the two-year-back rule because the referee's award did not extend beyond the two-year limit. There was no need for the employer to anticipate a need to argue the issue prior to the board's determination that it was liable to pay additional benefits. In addition, the employer did not stipulate or specify that an issue other than the two-year-back rule was to be the sole issue on appeal.

Justice Levin, concurring, agreed that the date of injury is not determinative, but would hold that the January 1, 1982 effective date stated in the 1980 and 1981 amendatory acts is determinative. The legislative purpose in providing a specific future effective date was to indicate when the provisions of the 1980 and 1981 amendatory acts providing for coordination of benefits would take effect. In stating that both acts should take effect on January 1, 1982, the Legislature indicated its intention that the coordination provisions of the acts would become effective on January 1, 1982, and not before that date. Thus, an

employer may not coordinate benefits in respect to weekly payments that become due before January 1, 1982, but coordination is required as to each weekly payment becoming due on or after that date.

Justice RILEY, joined by Justice RYAN, concurring, stated that the two-year-back provision clearly was intended to limit the authority of a hearing referee and the Workers' Compensation Appeal Board in awarding benefits. Thus, *Franks* should be reversed and remanded on the basis of that limitation, rather than the basis stated by the majority that the particular facts and circumstances of the case preclude the necessity of the defendant raising the provision in proceedings before the board.

Reversed and remanded.

Justice CAVANAGH took no part in the decision of *Franks.*

122 Mich App 177; 332 NW2d 447 (1982) reversed.

### OPINION OF THE COURT

1. WORKERS' COMPENSATION — COORDINATION OF BENEFITS.

    Section 354 of 1981 PA 203 may be applied to offset workers' compensation liability to workers injured prior to its effective date; an employer may reduce the amount of workers' compensation benefits payable after March 31, 1982, for periods of disability after that date by deducting other employer-financed benefits such as social security, disability, and pension benefits as specified in § 354 which are being received by an injured worker and are attributable to the same compensable periods after March 31, 1982 (1981 PA 203, MCL 418.354; MSA 17.237[354]).

2. WORKERS' COMPENSATION — COORDINATION OF BENEFITS.

    An employer need not file a petition with the Bureau of Workers' Compensation and prevail at an evidentiary hearing prior to coordinating workers' compensation benefits; it must only report to the bureau the credit against or reduction in benefits and provide proof of the basis for the reduction or credit if requested by the bureau (MCL 418.354; MSA 17.237[354]).

3. WORKERS' COMPENSATION — UNEMPLOYMENT COMPENSATION — OFFSET AGAINST BENEFITS.

    Unemployment compensation paid for weekly periods before January 1, 1982, is not deductible from workers' compensation benefits payable for the identical weekly periods, but weekly payments of workers' compensation that become due on or after January 1, 1982, are to be reduced by unemployment compensation paid or payable for the same periods, although

the worker was injured before that date (1980 PA 357, MCL 418.358; MSA 17.237[358]).

4. WORKERS' COMPENSATION — APPEAL BOARD — TWO-YEAR-BACK RULE.

The Workers' Compensation Appeal Board, after modifying a decision by a hearing referee so as to extend an employer's liability to pay workers' compensation benefits to include a period more than two years prior to the claimant's application for a hearing, erred in holding that the employer had waived a defense based on the two-year-back rule, where the decision being appealed did not involve an order setting liability to pay benefits beyond the two-year limit, the claimant had not requested review of the commencement date for eligibility for benefits, and the employer did not stipulate or specify that an issue other than the two-year-back rule was the sole issue on appeal (MCL 418.381[2]; MSA 17.237[381][2]).

CONCURRING OPINION BY LEVIN, J.

5. WORKERS' COMPENSATION — COORDINATION OF BENEFITS — EFFECTIVE DATES.

*The effective date of the acts amending the coordination of benefits provisions of the workers' compensation act are determinative of when they become effective, not the date of a worker's injury (MCL 418.354, 418.358; MSA 17.237[354], 17.237[358]).*

CONCURRING OPINION BY RILEY, J.

6. WORKERS' COMPENSATION — APPEAL BOARD — TWO-YEAR-BACK RULE.

*The Workers' Compensation Appeal Board or a hearing referee may not award the payment of benefits for any period of time earlier than two years immediately preceding the date on which a worker applies for a hearing with the Bureau of Workers' Disability Compensation (MCL 418.381[2]; MSA 17.237[381][2]).*

*Wisti, Jaaskelainen, Makinen & Goodman, P.C.* (by *Gordon J. Jaaskelainen*), for plaintiff Franks.

*Bockoff & Zamler, P.C.* (by *Daryl Royal*) for plaintiff Chambers.

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helves-*

*ton & Waldman, P.C.* (by *Granner S. Ries*), for plaintiff Gomez.

*Vairo, Mechlin, Tomasi, Johnson & Manchester* (by *Paul J. Tomasi*) for defendant White Pine Copper Division.

*Bodman, Longley & Dahling* (by *Theodore Souris, Lloyd C. Fell,* and *Kim Michael Lavalle*) (*M. J. Basford, W. W. Wallace,* and *D. M. Davis,* of counsel) for defendant General Motors Corporation in *Chambers.*

*Braun, Kendrick, Finkbeiner, Schafer & Murphy* (by *E. Louis Ognisanti* and *Bruce L. Dalrymple*) (*M. J. Basford, W. W. Wallace,* and *D. M. Davis,* of counsel) for defendant General Motors Corporation in *Gomez.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard F. Zapala,* Assistant Attorney General, for intervening defendant Director of the Bureau of Workers' Disability Compensation in *Chambers.*

Amici Curiae:

*Lacey & Jones* (by *Gerald M. Marcinkoski*) for Chrysler Corporation and *Conklin, Benham, Mc-Leod, Ducey & Ottaway, P.C.* (by *Martin L. Critchell*), for Michigan Self-Insurers' Association in *Chambers.*

BOYLE, J.

# I

## INTRODUCTION

We granted leave in these consolidated cases

arising under the Michigan Worker's Disability
Compensation Act of 1969, MCL 418.101 *et seq.;*
MSA 17.237(101) *et seq.,* to consider the interpreta-
tion of two recently enacted "set off" or "coordina-
tion of benefits" provisions that became effective in
1982. In each of these cases, we must decide
whether an employer may apply the appropriate
setoff to reduce its workers' compensation obliga-
tion with respect to payments made after the
effective date of the provision, to workers whose
injuries occurred prior to that date.

In the *Chambers* and *Gomez* cases, we consider
whether § 354, MCL 418.354; MSA 17.237(354), of
the act permits an employer to set off against its
obligation to pay workers' compensation benefits,
employer-financed pension and social security ben-
efits received by the disabled employee after
March 31, 1982, § 354's effective date, where both
the workers' compensation benefits and the other
employer-financed benefits relate to time periods
*after* such a date.

In the *Franks* case, we will consider whether an
employer may apply § 358, MCL 418.358; MSA
17.237(358), of the act to reduce the amount of its
liability for workers' compensation where that
liability is based upon periods of *disability prior to*
§ 358's effective date of January 1, 1982, but "pay-
able" after that date, by setting off against that
liability unemployment compensation benefits
chargeable to that employer and received by the
disabled employee to compensate for the wage loss
during those same *pre-1982 periods.* We will also
determine whether the Court of Appeals erred in
concluding that defendant waived application of
the two-year-back rule under the facts and circum-
stances of this case.

Both §§ 354 and 358 were enacted as parts of a
series of legislative reforms of the workers' com-

pensation laws of Michigan. Although § 358 was enacted on December 30, 1980, by 1980 PA 357, it did not become effective until January 1, 1982.[1] Section 354 became effective March 31, 1982, as part of a final series of enactments on December 30, 1981. 1981 PA 203.

The cases under consideration today involve employees who were injured prior to the effective dates of the pertinent sections. In *Chambers* and *Gomez,* the plaintiffs' employer, General Motors, applied § 354 to reduce its workers' compensation obligation, on the basis of liability for disability during periods *after* that section's March 31, 1982 effective date, to workers injured prior to that date. In *Franks,* the employer, *White Pine Copper,* sought to reduce its liability for workers' compensation benefits payable by the amount of unemployment compensation payment the employee had already received to compensate him for his wage loss during earlier periods also covered by the workers' compensation award.

In both instances the Workers' Compensation Appeal Board and the Court of Appeals held that § 354 and § 358 could not be applied to reduce workers' compensation obligations to workers injured prior to their respective effective dates.[2]

## II

### THE *CHAMBERS* AND *GOMEZ* CASES

### A. *Facts and Procedural History*

Plaintiff John Chambers worked for defendant

---

[1] See below, pp 667-668, for further discussion of the legislative history.

[2] *Franks v White Pine Copper Div,* 122 Mich App 177; 332 NW2d 447 (1982). The Court of Appeals denied leave in *Chambers* on April 20, 1983, citing its decision in *Franks* in the order of denial. Leave was denied in *Gomez* on May 24, 1983.

General Motors Corporation from April 1, 1943, until September 30, 1974, when he retired. Prior to retirement, plaintiff earned average weekly wages before tax of $238.80. Since October 1, 1974, plaintiff has received retirement benefits funded by defendant under its pension plan which have an after tax value of $103.75 per week.[3] He also receives old age social security · benefits in the amount of $94.34 per week.

Shortly after his retirement, on October 16, 1974, plaintiff filed a petition for workers' compensation benefits, alleging that he had developed disabling pulmonary and heart diseases as a result of his employment with defendant. A hearing was held on November 5, 1975, and an open award was entered in plaintiff's favor on February 16, 1976, by the hearing referee. Defendant was ordered to pay plaintiff $106 per week from October 1, 1975, on the basis of a finding of an injury incurred on September 30, 1974, the plaintiff's last day of employment. The award was affirmed by the Workers' Compensation Appeal Board on January 30, 1978. In addition, since January 1, 1982, Mr. Chambers has received $43 per week in supplemental workers' compensation benefits pursuant to MCL 418.352; MSA 17.237(352).[4]

Plaintiff Anacleto Gomez was injured on May 31, 1979, when he slipped and fractured his left ankle in the course of his employment with defendant General Motors Corporation. Defendant filed a report of injury and voluntarily paid compensation to Mr. Gomez at the rate of $161 per week from the date he was injured until February 25,

---

[3] The statutory setoff at issue applies only to the "after tax value" of such benefits; therefore, these are the only amounts of record.

[4] This is a supplemental workers' compensation benefit designed to account for the effect of inflation on the basic award. It is not subject to coordination. See also n 19 for further discussion of the supplemental benefit provision.

1980. Shortly thereafter, plaintiff filed a petition for workers' compensation benefits, alleging disability as a result of the 1979 injury to his left leg and ankle. In a decision mailed December 17, 1981, which was not appealed and is accordingly final, the hearing referee found plaintiff to be partially disabled and entered an open award ordering compensation payments of $161 per week. Since January 1, 1982, Mr. Gomez has also received supplemental compensation benefits in the amount of $17 per week, pursuant to § 352. In addition, plaintiff receives pension benefits of $179.36 per week, net after tax value, which are funded entirely by General Motors.

On December 30, 1981, the Legislature enacted 1981 PA 203, which included the coordination of benefits provisions of § 354, MCL 418.354; MSA 17.237(354). This section provides that an employer may coordinate employee benefits, by applying against its workers' compensation obligations payable for compensable periods after its effective date, that portion of certain other benefits, such as pensions and social security payments, also received by the employee and financed by the employer.

On March 31, 1982, the effective date of § 354, General Motors began coordinating benefits and notified plaintiffs Chambers and Gomez that it was reducing their weekly workers' compensation benefits in accordance with the provisions of that section. Because the sum of those portions of their employer-funded benefits subject to coordination exceeded their basic workers' compensation payments, elimination of plaintiffs' weekly compensation payments resulted, except for the supplemental benefits received pursuant to § 352 which were not subject to coordination.

Thus, prior to the effective date of § 354, Mr.

Chambers was receiving the following weekly payments: $106 basic workers' compensation, $43 supplemental workers' compensation, $94.34 social security, and net after tax pension benefits of $103.75. Section 354 authorized as an offset against workers' compensation fifty percent of social security payments, in this case $94.34 divided by 2 equals $47.17, and that proportion of retirement pension, after taxes, that have been funded by employer contributions, in this case $103.75. Because the sum of those portions of the employer funded benefits subject to coordination, $47.17 plus $103.75 equals $150.92, exceeded the workers' compensation payment of $106, coordination resulted in termination of basic workers' compensation benefits with the exception of the supplemental benefit payment of $43.

In the *Gomez* case, prior to the effective date of § 354, plaintiff was receiving pension benefits entirely funded by defendant with an after tax value of $179.35. Since the weekly after tax value of Mr. Gomez' pension exceeded his basic workers' compensation rate of $161, coordination resulted in termination of all workers' compensation benefits except for $17 per week in supplemental benefits. He is, of course, still receiving his pension benefits.

Both plaintiffs requested and were granted hearings under Rule 5[5] as to the propriety of General Motors' action in coordination of benefits. In both cases, the hearing referee ruled that the offset provisions of § 354 could not be applied to plaintiffs because their injuries occurred prior to the effective date of § 354. These rulings were affirmed by the Workers' Compensation Appeal Board. The

[5] An administrative hearing for the purpose of determining noncompliance with the Worker's Disability Compensation Act, authorized under Bureau Administrative Rules, 1979 AC, R 408.35.

board also ruled that an employer is required to petition and prevail at an evidentiary hearing before it is entitled to coordinate benefits under § 354.

Both plaintiffs also sought assessment of penalties pursuant to MCL 418.801(2); MSA 17.237(801)(2). In the *Chambers* case, the hearing referee denied the request on the ground that the case involved a substantial issue of statutory construction which was more than sufficient to establish an ongoing dispute. In the *Gomez* case, the referee awarded penalty benefits. The appeal board affirmed the denial of penalties in *Chambers* and reversed the assessment in *Gomez,* concluding that "enactment of [MCL 418.354; MSA 17.237(354)] *at least* created a substantial dispute as to statutory right of injured and disabled workers in plaintiff's class to continue to receive unreduced weekly benefits . . . ." The board was satisfied that under these *"first impression circumstances* . . . enough of a dispute arose as to plaintiff's right to continuing weekly benefits so as not to justify penalties."

General Motors' timely applications for leave to appeal were denied by the Court of Appeals in both cases and on March 29, 1984, this Court granted General Motors' applications for leave to appeal, directing that the *Franks, Chambers,* and *Gomez* cases be argued and submitted together. 419 Mich 855 (1984).

## B. *Section 354 of 1981 PA 203*

### 1. *The Statutory Provision*

On December 30, 1981, the Legislature enacted twelve amendments to the Worker's Disability Compensation Act, continuing the comprehensive

reform that began a year earlier.[6] These were embodied in 1981 PA 192-203. Section 354, MCL 418.354; MSA 17.237(354), was added by 1981 PA 203 and became effective March 31, 1982. Our first step in applying the statute must be an examination of its language, for, if it is clear, interpretation is unnecessary, and it need only be applied. *Selk v Detroit Plastic Products,* 419 Mich 1, 9; 345 NW2d 184 (1984); *Owendale-Gagetown School Dist v State Bd of Ed,* 413 Mich 1, 8; 317 NW2d 529 (1982); *City of Lansing v Lansing Twp,* 356 Mich 641, 648; 97 NW2d 804 (1959); *Grand Rapids v Crocker,* 219 Mich 178, 182; 188 NW 221 (1922); *MacQueen v City Comm'r of Port Huron,* 194 Mich 328, 342; 160 NW 627 (1916). Unless the statutory language is unclear, "our task . . . is to give effect to the plain meaning of the language used." *Owendale-Gagetown School Dist, supra.*

Section 354(1) contains the fundamental instructional and definitional provisions which set forth the statutory preconditions for coordination, the specific other benefit sources or plans to which the provision applies and the permitted coordinations and reductions. At the time of its enactment[7] this section provided as follows:

Sec. 354. (1) This section is applicable when either weekly or lump sum payments are made to

[6] See below, pp 667-668, for an historical discussion of the 1980 amendment.

[7] Several minor amendments were made to clarify the act in 1983 PA 159. The only change to the introductory paragraph of subsection (1) was insertion at the beginning of the second sentence of: "Except as otherwise provided in this section"; the other changes were minor and for clarification only, having no effect on our interpretation of the statute except to support our interpretation under the doctrine of *expressio unius est exclusio alterius,* because the amendments have not included any language to prevent application to persons injured prior to the effective date of the statute. In fact, a bill introduced to achieve that result was defeated. See n 19.

an employee as a result of liability pursuant to section 351, 361 or 835 with respect to the same time period for which old-age insurance benefit payments under the social security act, 42 U.S.C. 301 to 1397f; payments under a self-insurance plan, a wage continuation plan, or a disability insurance policy provided by the employer; or pension or retirement payments pursuant to a plan or program established or maintained by the employer, are also received or being received by the employee. The employer's obligation to pay or cause to be paid weekly benefits other than specific loss benefits under section 361(s) and (3) shall be reduced by these amounts . . . .

We disagree with the Workers' Compensation Appeal Board to the extent that it found the provisions of § 354 ambiguous and find that this statute clearly and unambiguously requires coordination of workers' compensation and other specified benefits for all compensable periods subsequent to its effective date, regardless of when the injury occurred. The statute does not limit its application to cases where workers' compensation payments are made to an employee *for injuries incurred after its effective date,* or *for injuries incurred after March 31, 1982.* Nor does it contain any language indicating that it should *not* be applied when payments are being made *for injuries that occurred prior to March 31, 1982.* The Legislature's failure to do so leaves the section generally applicable to payments made after its effective date. In the absence of express language of limitation, "[t]his court cannot write into the statutes provisions that the legislature has not seen fit to enact." *Paselli v Utley,* 286 Mich 638, 643; 282 NW 849 (1938).

Section 354(9) which deals with overpayments

reinforces this reading. At the time of its enactment[8] this section provided:

> (9) Except as otherwise provided in this section, any benefit payments under the social security act, or any fund, policy, or program as specified in subsection (1) which the employee *has received* or *is receiving after the effective date of this section* and during a period in which the employee was receiving unreduced compensation benefits under section 351, 361 or 835 shall be considered to have created an overpayment of compensation benefits for that period. The employer or carrier shall calculate the amount of the overpayment and send a notice of overpayment and a request for reimbursement to the employee. Failure by the employee to reimburse the employer or carrier within 30 days after the mailing date of the notice of request for reimbursement shall allow the employer or carrier with the approval of the bureau to discontinue 50% of future weekly compensation payments under section 351, 361 or 835. The compensation payments withheld shall be credited against the amount of the overpayment. Payment of the appropriate compensation benefit shall resume when the total amount of the overpayment has been withheld. [Emphasis added.]

The language of § 354(9) also demonstrates that the Legislature is capable of including words of express limitation when it intends to do so.

We also disagree with the board's assumption that application of the coordination of benefits provision of § 354 to workers' compensation payments for compensable periods after the effective date of the statute would constitute retrospective application simply because the liability is based upon an injury that occurred prior thereto. *Hughes v Judges' Retirement Board,* 407 Mich 75,

---

[8] The 1983 amendment substituted "March 31, 1982" for "the effective date of this section" in subsection (9).

86; 282 NW2d 160 (1979). As the board accurately observed at the outset of its opinion, "it is not contended that compensation benefits should be retroactively coordinated or reduced. Rather it is argued that the benefits of *all* disabled workers should be *prospectively* coordinated after the effective date of the enactment *regardless of when they were injured.*"

While § 354 may in some cases involve an antecedent event, such as an injury incurred prior to its effective date, by its clear language it operates only with regard to payments received *and* attributable to periods after its effective date. "Our [obligation] is to give effect to the plain meaning of the language used." *Selk, supra,* p 9.

## 2. *Constitutionality*

Plaintiffs argue that the Legislature may not constitutionally deprive workers who were injured before the effective dates of the workers' compensation benefits that they otherwise would have been entitled to receive after those dates. These arguments are premised on an erroneous concept of workers' compensation benefits.

Workers' compensation is not generally payable to compensate for an injury, although lump-sum specific-loss benefits are payable for certain injuries without regard to disability from earning wages. In this connection, it is noteworthy that the Legislature did not, in the 1981 reform act, provide for coordination of lump-sum specific-loss benefits with social security and pension and retirement benefits; in the earlier 1980 act, it did not except from coordination specific-loss benefits with unemployment compensation benefits.

Generally, however, workers' compensation benefits are payable not for the injury—although historically there was a trade-off of tort liability

for workers' compensation benefits—but for the disability, which has been defined as loss of wage-earning capacity.

Workers' compensation benefits are social-welfare income-maintenance benefits. Workers' compensation is the first or progenitor safety net providing a means of income maintenance for persons who have met misfortune or whose regular income source has been cut off. All the social welfare programs—workers' compensation, unemployment compensation, social security old age, disability, and survivors benefits, no-fault automobile benefits, aid to families with dependent children, and general assistance—are directed to the same objective, income maintenance. All these programs are funded by impositions on employers and others of mandatory payments (to the government, insurers or, in the case of the self-insured, to the beneficiary), with statutorily prescribed benefits. In providing for such benefits, the Legislature did not covenant not to amend the legislation.

Income-maintenance benefits payable under a legislatively mandated social welfare program are not property protected by the Due Process Clause, the Contract Clause,[9] or the Takings Clause from substantive change by subsequent legislation irrespective of whether the recipient contributed to the cost of funding the benefit or of whether the program replaces a tort remedy which has been abolished.[10]

## 3. The Public Policy Underlying the Coordination of Benefits Provisions

[9] The Michigan Constitution provides, however, that "[t]he accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby." Const 1963, art 9, § 24.

[10] See *Shavers v Attorney General,* 402 Mich 554, 620; 267 NW2d 72 (1978). See also *Lahti v Fosterling,* 357 Mich 578, 591-592; 99 NW2d 490 (1959).

Analysis of the legislative history of the coordination of benefits provisions provides further support for our conclusion. In November of 1981, Governor William Milliken discussed his proposals to solve what he deemed the "biggest single liability to Michigan's job climate today."[11]

> To start with, we must keep in mind that the purpose of workers' compensation, after all, is to restore wage-earning capacity lost in on-the-job accidents. Workers' compensation was never intended to be more lucrative than gainful employment or to be a retirement bonus.
>
> I have proposed that we coordinate benefits from different employer-paid sources so that workers receive the maximum benefits to which they are entitled, but no more. It is only simple justice that an employer not be assessed costs for several different funds which result in reimbursing the injured worker for more than the lost wage-earning capacity.[12]

Legislative analysis of § 354 by the Senate Analysis Section reiterated these concerns:

> Coordination of benefits has been a major concern of employers for years. Public Act 357 coordinated workers' compensation with unemployment compensation (effective January 1, 1982) [MCL 418.358; MSA 17.237(358)] but failed to address coordination with Social Security and other insurance and pension plans. By coordinating workers' compensation benefits with Social Security and other benefits, Senate Bill 595 would provide a major savings to employers in the cost of workers' compensation while maintaining adequate benefit levels for disabled workers.

[11] Remarks by Governor William G. Milliken to the Ann Arbor Chamber of Commerce on November 18, 1981.

[12] *Id.*

From its creation in 1912, workers' compensation in Michigan has been intended as a means of protecting an employee's ability to earn wages by replacing wages lost because of a disability resulting from an on-the-job injury. Since 1912, other public and private wage replacement insurance programs have appeared with the result that many employees now receive wage-loss benefits from two, three, or four different programs providing a total wage "replacement" greater than the wages the employee earned while on the job, while employers who must contribute to these programs find themselves paying more than once to replace the wages of a single employee. Such a situation is contrary to the basic philosophy of Michigan's wage-loss system and discourages some disabled employees from returning to work. Coordination of benefits, as proposed in Senate Bill 595, would reduce the overlap between the various public and private wage replacement programs while ensuring adequate wage-loss benefits to injured employees.[13]

Finally, on December 12, 1984, Theodore J. St. Antoine, the Governor's Special Counselor on Workers' Compensation, presented to Governor James J. Blanchard's Cabinet Council on Jobs and Economic Development his *Report on Workers' Compensation in Michigan: Costs, Benefits, and Fairness.* Professor St. Antoine summarized the perceived abuses in the workers' compensation system which impelled the Legislature to enact § 354 as a reform measure:

For many years the most hotly discussed topic concerning the Michigan workers' compensation system was the so-called "retiree problem." It was almost unique to this State. Its legal underpinning was the notion developed by the Workers' Compen-

---

[13] Senate Analysis Section, SB 573: First Analysis, p 6 (January 7, 1982).

sation Appeal Board, with some support from the judiciary, that a retired worker, even one who had voluntarily retired and gone on a company-funded pension, could still be suffering from a loss of wage earning capacity. If the retiree could demonstrate that he or she had incurred a disability caused by pre-retirement job activity or working environment (a bad back from 30 years on the assembly line or a dust disease from 30 years in a foundry), the retiree was entitled to workers' compensation. It should be emphasized that in many of these cases the disability was undoubtedly genuine, at least in the physical impairment sense, and such an employee would unquestionably be eligible for medical benefits. The fighting issue was whether he was also entitled to recover for wage loss. . . . [F]or a "Big Three" automobile manufacturer (the most common target of this practice), it was plainly provoking, not to mention costly, to see workers take early retirement and walk out of a plant one day and then proceed to file their workers' compensation claims the next.

In 1973 the Big Three (General Motors, Ford and Chrysler) paid out $51 million in wage loss benefits, of which $24 million, or 47 percent, went to retirees. For Michigan employers as a whole, out of a total of $191 million in wage loss benefits, $45 million, or 24 percent, went to retirees. With such a large part of the compensation dollar going to persons who were no longer part of the active work force, it was inevitable that reforms would be demanded.

Professor St. Antoine specifically endorsed the concept of coordination of benefits:

Similarly, I am satisfied that the 'coordination of benefits' provisions in the 1980 and 1981 amendments should remain in the statute, probably permanently. The principle of avoiding duplicative payments under workers' compensation and other income maintenance programs, such as private pensions and Social Security, was endorsed by the

National Commission on State Workmen's Compensation Laws. . . . [T]he coordination arrangements have also served to check, if not eradicate, one of the most criticized aspects of Michigan's workers' compensation system, namely, the payment of disability benefits to retired workers who almost by definition are suffering no wage loss. As I understand it, organized labor is not so much opposed to the concept of coordination of benefits as to its application even in situations where noncoordination would not have resulted in a worker's receiving more than he would have earned if working. There is some merit in this view, but it is offset by the long-standing notion that income replacement should not be total lest it prove a disincentive to work, and that in any event an unemployed person will be spared certain daily expenses incurred by an active worker.

We may not premise our decision in these cases upon our own feelings about the wisdom of what the Legislature has done, nor any equitable concerns about the express proposes and potential effect of the enactment under consideration. See *City of Lansing v Lansing Twp,* 356 Mich 641, 648-650; 97 NW2d 804 (1959). See also *Manistee Bank v McGowan,* 394 Mich 655, 666-667; 232 NW2d 636 (1975). Nor is it properly part of our function to decide whether or not those things which the Legislature sought to change really constituted abuses. That the Legislature believed that it was abusive for an injured and disabled worker to receive workers' compensation benefits and benefits from certain other sources at the same time is clear. Section 354's rationale for eliminating the abuse of duplicate payments so that income replacement does not prove a disincentive to work applies whether an injury occurred prior to or following its enactment. We apply the statute in these cases as it literally reads, and as we believe the Legislature intended.

## 4. *Legislative Resolution Passed After Enactment of § 354*

A legislative resolution[14] passed after enactment of § 354 which purported to interpret the statute to prevent coordination of benefits of persons injured prior to its effective date is not binding on this Court.[15] The resolution appears to have been the result of an attempt by those who had opposed the legislation to subsequently limit its scope.[16] Had the Legislature wanted to change § 354 to impose that limitation, it could have properly done so only by amendment. Although § 354 has been amended,[17] such amendments have not limited its application with respect to date of injury. Finally, the respectful consideration to which legislative resolutions are entitled, *Boyer-Campbell Co v Fry,* 271 Mich 282, 296; 260 NW 165 (1935), is offset here by the fact that a bill introduced to achieve that result was defeated.[18]

## 5. *Application to Facts of These Cases*

As of March 31, 1982, plaintiffs Chambers and Gomez were receiving weekly payments "as a result of liability pursuant to" §§ 351 and 361(1), respectively, of the Worker's Disability Compensa-

---

[14] Senate Concurrent Resolution No. 575 adopted by the Senate on April 1, 1982, 1982 Senate Journal 626, 705; adopted by the House on May 18, 1982, 1982 House Journal 1262. For the text of the resolution, see 1982 Senate Journal 686.

[15] While we have expressed "respect" for legislative resolutions, we must decide cases by reference to the language of the statutes in question. See, *e.g., Becker v Detroit Savings Bank,* 269 Mich 432; 257 NW 853 (1934); *McAvoy v H B Sherman Co,* 401 Mich 419, 456-460; 258 NW2d 414 (1977).

[16] The recorded vote in the Senate indicates that a majority of those who voted in favor of the resolution had voted against § 354, and all but one of the Senators who had voted against § 354 voted for the resolution. Senate Vote on Concurrent Resolution No. 575 and Roll Call No. 174, 1982 Senate Journal 706-707. See also the comments of Senators Brown and Engler, 1982 Senate Journal 705.

[17] See n 7.

[18] Senate Bill No. 834, introduced on May 20, 1982.

tion Act. Mr. Chambers was also receiving old age insurance benefit payments under the Social Security Act, 42 USC 301-1397f, and both were receiving pension payments pursuant to a plan established, maintained, and fully funded by their employer.

Subsequent to that date, the provisions of § 354 authorized defendant to offset against its basic workers' compensation obligations to plaintiffs, fifty percent of the old-age social security benefits, and one hundred percent of the after tax value of the employer-funded pension benefits. It is not disputed that the sum of those portions of the employer-funded benefits subject to coordination under § 354 exceeded the amounts of defendant's basic workers' compensation obligations to plaintiffs herein. Therefore proper application of the setoff provisions of § 354 resulted in termination of defendant's obligation to pay basic weekly compensation benefits of $106 to Chambers and $161 to Gomez. Plaintiffs' supplemental benefits, received pursuant to § 352, are not subject to coordination.[19]

### C. *Procedural Prerequisites to Coordination of Benefits Under § 354*

We also disagree with the board's ruling that benefits cannot be coordinated by an employer under § 354 until the employer files a petition with the Bureau of Workers' Disability Compensation and produces evidence at a hearing which proves

---

[19] Section 352 was enacted as part of 1980 PA 357 on December 30, 1980 and provided for compensation supplements for those injured in the years 1965 to 1979. These supplements range from 10.3 percent for those injured in 1979, to 40.7 percent for those injured in 1975, to 88.6 percent for those injured in the years 1965 to 1968 and are not subject to coordination. While the reform package may not have resulted in perfect equity for everyone, we are unable to say that it does not represent a reasoned legislative attempt to reconcile fairly the various interests of workers injured at different dates with the economic needs of this state.

that it is "factually and legally entitled to stop or reduce plaintiff's weekly benefit." The Legislature has directly addressed this issue and provided in § 354(10) a simple statutory reporting procedure when the employer takes a credit or makes a reduction:

> The employer or carrier taking a credit or making a reduction as provided in this section shall immediately report to the bureau the amount of any credit or reduction, and as requested by the bureau, furnish to the bureau satisfactory proof of the basis for a credit or reduction.

Section 354 contains no provision requiring the employer to file a petition and present proofs at an evidentiary hearing prior to coordinating an employee's benefits. The express language of subsection (10) makes it clear that what is required of the employer is that it report the credit or reduction in benefits and provide proof of the basis for it if requested by the bureau.

Whether a claimant has received social security or pension benefits giving rise to a setoff under § 354 is an objective fact that can be readily determined. For that reason, and because the amount of the setoff is a matter of arithmetic, the Legislature has provided that the employer may coordinate benefits without prior administrative approval. However, the employer must notify the bureau of the amount of any setoff and, upon request, furnish proof of the basis for the setoff. Section 354(10). If, based on the documentation furnished, the director believes the employer is failing to comply with the act, he may convene a hearing under Rule 5 of the Bureau's Administrative Rules, 1979 AC, R 408.35.[20] Those procedures are

---

[20] See n 5.

facially adequate to protect the claimant's interest; there is no reason to believe that the director, who is charged with protecting the rights of workers under the act, will not conscientiously and expeditiously investigate the matter, as he did at plaintiffs' request in these cases. Moreover, where the director fails to act, the claimant is entitled to a hearing upon filing an application. MCL 418.847; MSA 17.237(847); 1979 AC, R 408.34.

That the hearing occurs after the employer has begun coordinating benefits does not deny due process. In *Mathews v Eldridge,* 424 US 319, 339; 96 S Ct 893, 903; 47 L Ed 2d 18 (1976), the Supreme Court held that the opportunity of social security beneficiaries whose disability benefits were terminated to have a post-termination hearing sufficed to satisfy the requirements of due process.

Under *Mathews,* the factors relevant to whether a statutory procedure satisfies due process are:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [424 US 335.]

Applying those considerations to the statutory scheme here, the private interest at stake for a claimant is the remote possibility that an arithmetical error would cause a temporary decrease, which he could later recoup, in the total benefits paid by the employer. On the other hand, overpayments by an employer while waiting for

the board to approve a setoff may be difficult or impossible to recover.

The second consideration in determining whether a post-termination hearing will satisfy procedural due process is the risk of an erroneous decision. In *Mathews,* the Supreme Court emphasized that less than twenty percent of the original administrative redeterminations of entitlement to disability benefits were reversed on appeal. The determination of whether workers' compensation may be set off is even less subject to error than the disability compensation termination decision involved in *Mathews.* Unlike a determination that a worker is no longer disabled, which may involve subjective evaluation of factual questions subject to conflicting interpretation, the fact and amount of social security and pension benefits received can be readily determined and documented.[21] As stated in *Mathews,* "procedural due process rules are shaped by the risk of error inherent in the truth-finding process as applied to the generality of cases, not the rare exceptions." 424 US 344.

The last factor listed in *Mathews* was the interest of the government, which the Court equated with the public interest. 424 US 347. That consideration clearly militates against requiring a hearing prior to a setoff. The Legislature already has determined that whatever minimal value a prior hearing would have would be outweighed by the added burden on employers of paying uncoordinated benefits pending an administrative hearing and the increased administrative expenses of holding hearings.

---

[21] In fact, under the provisions of § 354 the employee must provide the employer or carrier with properly executed authority for release of information "to be utilized by the employer or carrier to obtain necessary benefit entitlement and amount information from the appropriate source." § 354(6). See also § 354(3). Compare *Cleveland Bd of Ed v Loudermill,* 470 US 532; 105 S Ct 1487; 84 L Ed 2d 494 (1985).

Although we recognize that coordination of benefits may affect a substantial reduction or cessation of benefits which is inconsistent with the legislative objective to provide a disabled worker and his dependents with the means to survive "the catastrophe which the temporary cessation of necessary income occasions," *McAvoy v H B Sherman Co,* 401 Mich 419, 437; 258 NW2d 414 (1977), absent a constitutional challenge or a contrary permissible reading of the statute, we are not at liberty to substitute our view regarding the equities of the procedure for that of the Legislature.

## D. *Conclusion*

We hold that the provisions of § 354 of 1981 PA 203; MCL 418.354; MSA 17.237(354), may be applied to offset workers' compensation liability to workers injured prior to the effective date of that section, and that an employer may reduce the amount of workers' compensation benefits payable after March 31, 1982, for periods of disability *after* that date, by deducting other employer-financed benefits as provided in § 354(1)(a)-(e) which are being received by the injured employee and are attributable to the same compensable periods *after* March 31, 1982.

We also hold that an employer is not required to petition and prevail at an evidentiary hearing before it is entitled to coordinate benefits under § 354, but that, instead, the reporting and informational provisions of § 354(10) and the employee's right to seek a hearing in the event of dispute will govern.

In light of our resolution of the foregoing, we approve of the WCAB's analysis and resolution of the issue of assessment of penalty benefits pursuant to MCL 418.801(2); MSA 17.237(801)(2), and

agree that penalty benefits should not be assessed in these cases.

The decisions of the WCAB are reversed, and these cases are remanded for entry of decisions consistent with this opinion.

## III

### THE *FRANKS* CASE

#### A. *Facts and Procedural History*

Plaintiff Larry Franks began his employment with defendant White Pine Copper Division in June of 1970. On March 7, 1971, while classified as a development miner, he sustained a work-related injury to his right hand, which resulted in the amputation of four fingers.

Following his accident, plaintiff received 215 weeks of specific loss benefits pursuant to MCL 418.361(2)(h); MSA 17.237(361)(2)(h) for the loss of a hand. He returned to work ten weeks after his injury, on May 24, 1971. Although there is some dispute as to his job description thereafter,[22] after a period of readjustment plaintiff resumed many of his previous duties. With the exception of layoff periods from January 4, 1976, to April 26, 1976, and from November 13, 1976, to May 31, 1977, due to defendant's economic difficulties, plaintiff worked for defendant until August 1, 1977, when he was permanently laid off. He received unemployment benefits, which were charged against

---

[22] It appears that sometime in 1971 the development-miner classification was eliminated and plaintiff's classification moved up to that of a driller-blaster. Although the parties seem to agree that plaintiff could not have used the type of drill he was using prior to his injury, the defendant had substituted new equipment which plaintiff was able to use. Many of the duties in these job descriptions overlap.

White Pine's rating account,[23] during both interim layoff periods and for the maximum time allowed after the permanent layoff.

On July 26, 1978, Mr. Franks filed a petition for workers' compensation, claiming total disability as a result of the 1971 hand injury. A hearing was held in March of 1979 and in a decision dated May 24, 1979, the hearing referee found plaintiff to be partially disabled and awarded benefits commencing August 2, 1977, the first day of the permanent layoff.

A timely appeal was filed by the defendant in June of 1979 with the Workers' Compensation Appeal Board. Defendant alleged error in the finding of disability and contended that it was entitled to a setoff for the unemployment benefits plaintiff had collected under a theory that the unemployment benefits were a substitute for wage earning capacity and therefore should be set off from compensation benefits in the same manner as wages. Plaintiff filed no appeal or cross-appeal of the decision of the hearing referee or of the August 2, 1977 benefit commencement date.

On February 18, 1982, forty-eight days after the effective date of § 358, the Workers' Compensation Appeal Board issued its decision. The board affirmed the finding of disability and denied a setoff of unemployment benefits. In addition, the board, *sua sponte,* reversed that portion of the hearing referee's order directing that payment for plaintiff's partial disability should begin as of August 2, 1977, and ordered computation of payment due from the time claimant returned to work in 1971. Anticipating an objection from defendant based on the two-year-back rule, MCL 418.381(2); MSA 17.237(381)(2), the board held that defendant had

---

[23] Such charges result in an increase in unemployment tax paid by the employer.

waived any right to application of the rule by failing to affirmatively raise that issue as a defense. The Court of Appeals affirmed. 122 Mich App 177; 332 NW2d 447 (1982).

This case raises three issues. First, as in *Chambers* and *Gomez,* we must determine whether the amendatory legislation, in this case § 358 of 1980 PA 357, was intended to apply to persons injured prior to the enactment or effective date of the setoff provision. However, even if we determine that, like § 354, § 358 was intended to apply to workers whose injuries predated its enactment, that does not resolve the *Franks* case for we must then determine whether, under § 358, an employer may apply the statutory setoff to reduce its outstanding liability for compensable periods prior to that provision's effective date.

Specifically, in this case we must determine whether the employer White Pine may reduce its liability for workers' compensation found to be payable for periods of disability in 1977 and 1978, but not yet paid as of January 1, 1982, by deducting the amount of unemployment compensation Mr. Franks received for loss of wages during those same periods in 1977 and 1978. Finally, we must determine whether the Court of Appeals erred in finding the defendant had waived the defense of the two-year-back rule under the facts and circumstances of this case.

## B. *Section 358 of 1980 PA 357*

### 1. *The Statutory Provision*

On December 30, 1980, while this appeal was pending before the Workers' Compensation Appeal Board, the Michigan Legislature enacted 1980 PA 357, which was the first step in the recent reform of the Michigan workers' compensation system. The Legislature directed that most of the provi-

sions of this act, including § 358, were to become effective one year later, on January 1, 1982. Then, on March 10, 1982, in § 2 of 1982 PA 32, the Legislature repealed enacting § 3 of 1980 PA 357 and simultaneously reenacted § 358 along with certain other provisions providing for the same effective date of January 1, 1982, which at that time was retroactive. 1982 PA 32, § 3(2). Section 358 provides as follows:

> Net weekly benefits payable under section 351, 361, or lump sum benefits under section 835, shall be reduced by 100% of the amount of benefits paid or payable to the injured employee under the Michigan employment security act, Act No. 1 of the Public Acts of the Extra Session of 1936, as amended, being sections 421.1 to 421.67a of the Michigan Compiled Laws, for identical periods of time and chargeable to the same employer.

### 2. *Application to Pre-1982 Injuries*

The Court of Appeals held that the setoff provisions of § 358 could not be applied to employees whose injuries predated that provision's effective date. It reached this conclusion, based upon the assumption that such application would, in all cases involve retroactive application of the statute, and, after concluding that the statute was ambiguous on this question, applied principles of statutory construction to find "that the Legislature's failure to provide clearly and unequivocally for applicability to cases of injuries predating its effective date mandates prospective application." 122 Mich App 186.

We believe the analysis of the Court of Appeals on this question is erroneous. As in *Chambers* and *Gomez,* we disagree with the Workers' Compensation Appeal Board and the Court of Appeals and find that the setoff provision of § 358 may be

applied to reduce workers' compensation liability to workers injured prior to its effective date. As this Court indicated in *Hughes, supra,* p 86, "A statute is not regarded as operating retrospectively because it relates to an antecedent event. Merely because some of the requisites for its application are drawn from a time antedating its passage[, a law is not] retrospective." See also *Selk, supra.*[24]

3. *Application to Compensable Periods Prior to Effective Date*

The Court of Appeals holding on the date of injury issue made it unnecessary for that court to distinguish cases in which the workers' compensation liability relates to periods of disability prior to January 1, 1982, from cases involving compensable periods commencing on or after January 1, 1982. However, our conclusion that § 358 may be applied to pre-effective date injuries is not dispositive of the claim involved in this case and requires us to address the latter question; that is, whether the setoff provisions of § 358 may be applied to reduce an employer's liability for workers' compensation for periods of disability prior to January 1, 1982, by the amount of unemployment compensation benefits the employee received for the same pre-1982 periods, simply because the workers' compensation benefits remained unpaid as of January 1, 1982. We hold that unemployment compensation paid for weekly periods prior to the January 1, 1982 effective date of § 358 may not be deducted from workers' compensation benefits payable for the identical pre-1982 periods.

Unlike the factual situation in *Chambers, Go-*

---

[24] We also note that the Court of Appeals reliance on a legislative resolution related to § 354 is erroneous. As discussed *ante,* p 659, the resolution in question is nonbinding with respect to § 354 itself. Thus, it would be incongruous to apply it to interpret the provisions of § 358.

*mez,* and *Hughes,* application of § 358 to alter
liability for benefits due and payable prior to its
effective date does constitute retrospectivity. In
*Hughes, supra,* p 87, this Court made clear that
"by requesting benefits not from the date of retire-
ment but from the effective date of the amend-
ment in question, plaintiffs seek only prospective
application of the amendment." Application of the
provisions of § 358 for a period of time preceding
that statute's effective date is purely retrospective.

a. *Application of Rules of Construction*
   (i) Is the Language Ambiguous?

Traditional general constructional rules to deter-
mine whether a statutory amendment or enact-
ment should be held to operate retrospectively are
well established. The primary and overriding rule
is that legislative intent governs. All other rules of
construction and operation are subservient to this
principle. Therefore, the initial critical inquiry is
whether the Legislature has stated its retrospec-
tive or prospective intention in clear and express
language. See *Karl v Bryant Air Conditioning Co,*
416 Mich 558, 570; 331 NW2d 456 (1982). A statute
is not open to construction as a matter of course,
but only where the language used in the statute
requires interpretation—where it is ambiguous or
where two or more constructions can be placed
upon it, where it is of such doubtful or obscure
meaning that reasonable minds might be uncer-
tain or disagree as to its meaning." *City of Lans-
ing v Lansing Twp, supra,* p 649. See also *Owen-
dale-Gagetown School Dist, supra,* p 8; *Selk, supra,*
p 8.

We find nothing in the language of § 358 clearly
indicating that workers' compensation benefits
which remain payable after the statute's effective
date are subject to setoff where those benefits are

payable for periods of disability prior to the effective date of the section and where the unemployment benefits were also paid for periods prior to the effective date. The statute merely provides that "[n]et weekly [workers' compensation] benefits payable" be reduced by the "amount of [unemployment] benefits paid or payable to the injured employee . . . for identical periods of time and chargeable to the same employer." This language does not constitute a clear legislative statement as to retroactivity or to the period of time intended to be covered by the statute. Although it supplies some limitations as to when unemployment benefits qualify for the setoff, it says nothing about the period of time to which the setoff attaches.

Where the Legislature has not stated any retrospective intention in clear and express language and the statute is ambiguous interpretation is required. See *Karl, supra.*

(ii) Does the Act Actually Operate Retrospectively?

"As a matter of statutory construction, statutes are presumed to operate prospectively unless the contrary intent is clearly manifested." *Selk, supra,* p 9, and cases cited therein. "A retrospective law is one which takes away or impairs vested rights acquired under existing laws, or creates a new obligation and imposes a new duty, or attaches a disability with respect to transactions or considerations already past." *Hughes, supra,* p 85.

Although a statute is not regarded as operating retrospectively merely because it relates to an antecedent event, as we have already observed, application of the provisions of § 358 to impose a disability, in the form of a setoff, upon the amount of workers' compensation time periods prior to the effective date of the legislation in question, is purely retroactive. *Cf. Hughes, supra,* p 85. The

unemployment benefits at issue were received prior to the effective date of § 358. Although payments of the disability benefits were not made prior to January 1, 1982, because of the pendency of this appeal, the payments for the identical period of time as the unemployment payments involved were "due" and thus "payable" prior to the effective date of the statute. See MCL 418.801(1); MSA 17.237(801)(1). See also *Selk, supra,* p 8, and p 17, n 3, and accompanying text (LEVIN J., *dissenting*). Workers' compensation benefits are geared to weekly wage loss. The weekly workers' compensation benefits at issue in this case became due over four years before the January 1, 1982 effective date of § 358. We therefore conclude that application of the statute to payments due for these periods would be purely retrospective.

(iii) Is the Act Remedial or Procedural?

An exception to the general rule is recognized where a statute is remedial or procedural in nature. *Hansen-Snyder Co v General Motors Corp,* 371 Mich 480; 124 NW2d 286 (1963). Thus, statutes which operate in furtherance of a remedy or mode of procedure and which neither create new rights nor destroy, enlarge, or diminish existing rights are generally held to operate retrospectively unless a contrary legislative intention is manifested. In *Selk,* we found the interest rate on overdue compensation payments related to a remedy or mode of procedure and was "but an incident and not the essence of a right or liability." *Selk,* p 11.

The issue in this case is distinguishable from that in *Selk.* In essence, interest is a payment for the use of someone else's money. As we noted in *Selk,* this is not a matter of substance going to the individual's right to compensation. Rather, it is a matter of procedure. Unlike the interest statute in

*Selk,* the statute here in question may not be regarded as wholly procedural in character. Its effect, if applied, would result in taking from the plaintiff the substantive right to receipt of compensation payments which existed prior to enactment of § 358. Consequently, only a clear statement of legislative intent could justify retroactive application.[25]

Nor are we persuaded that § 358 should be applied retroactively because it can be characterized as "remedial." This Court has been reluctant to apply this exception without extensive exploration of legislative intent. See, *e.g., Rookledge v Garwood,* 340 Mich 444; 65 NW2d 785 (1954); *Lahti v Fosterling,* 357 Mich 578; 99 NW2d 490 (1959). We agree with the Court of Appeals that "[w]hile § 358 is 'remedial' in the sense that it was adopted to effect a reform which, in the eyes of many, will correct certain injustice in the system, [retroactive application would] also significantly and detrimentally affect the substantive right of certain injured employees to receipt of workers' compensation benefits." 122 Mich App 186. In addition, such a construction would appear to reward employers who are found to have incorrectly withheld payment of workers' compensation benefits and correspondingly penalize those who timely made such payments prior to January 1, 1982. We cannot attribute to the Legislature an intention to reward those in defendant's position.

We find nothing to overcome the presumption that prospective operation only was intended, and

---

[25] Although there was some disagreement among the members of this Court as to the importance of effective dates in determining legislative intent, see *Selk,* p 35, n 2, and pp 41-42 (LEVIN J., *dissenting*), we agree here that there is nothing in either the history of the statute or the provisions for its effective date that can overcome the presumption that the statute was to apply prospectively only to payments for periods of disability from and after the effective date.

therefore conclude that unemployment compensation paid for weekly periods before the January 1, 1982 effective date of § 358 is not deductible from workers' compensation benefits payable for the identical pre-1982 periods, but that weekly payments of workers' compensation that become due on or after January 1, 1982, are to be reduced by unemployment compensation benefits paid or payable for the same periods.

## C. *Waiver of the Two-Year-Back Rule*

We also are unable to concur in the Court of Appeals holding that defendant had waived the two-year-back rule, MCL 418.381(2); MSA 17.237(381)(2), *Kleinschrodt v General Motors Corp*, 402 Mich 381; 263 NW2d 246 (1978).

### 1. *The Meaning of Kleinschrodt*

This Court's holding in *Kleinschrodt* that defendant had waived the defense of the one-year-back rule, MCL 418.833; MSA 17.237(833), by failing to raise it before the appeal board was expressly limited to the circumstances of that case. In *Kleinschrodt*, the hearing referee had ordered disability payments for a scheduled loss that occurred ten years before the claim had been filed. Thus, the decision involved liability for a time period that exceeded the limitations of the one-year-back rule, and it would have been both appropriate and indeed necessary to raise the rule as a defense to liability at the time of appeal. However, on appeal to the wcab, General Motors not only failed to raise what may have been the complete defense of the one-year-back rule, it specifically limited the issues to be considered by the board to the question of disability. Although the Court divided over whether the one-year-back rule is a jurisdictional limitation on the authority of the wcab or a

waivable defense,[26] the majority interpreted the provision as a nonjurisdictional "defense, akin to the statute of limitations, which can be waived." *Id.* However, in its per curiam opinion, the Court noted and expressly relied upon the defendant's stipulation as to the single issue in finding the defense had been waived.

2. *Applicability of* Kleinschrodt *to Facts of This Case*

We find the rationale and principles of *Kleinschrodt* inapplicable to the facts before the WCAB and Court of Appeals in the *Franks* case. Mr. Franks filed the petition in this case on August 26, 1978. The hearing referee ordered payment of weekly benefits "from August 2, 1977 . . . ." Plaintiff's employer, White Pine, filed an application for review of the referee's decision with the appeal board, alleging error in the finding of disability and the refusal to apply a setoff for unemployment compensation benefits. As no disability benefits had been ordered for time periods prior to August 2, 1977, there was no reason for the defendant to raise the defense of the two-year-back rule on appeal. The issue of benefits for any period earlier than two years before the petition was filed was not present to defend against.

The claimant in this case filed no application for review or cross-application requesting review of the hearing referee's decision on the benefit commencement date. In his brief to the WCAB, he indicated that "[t]his Brief is submitted in opposi-

---

[26] Justice RYAN concurred with Justice COLEMAN in viewing the one-year-back provision as a jurisdictional limitation on the authority of the WCAB which is not subject to waiver by the parties. 402 Mich 384 (COLEMAN, J., *dissenting*). They criticized the majority for overruling Michigan precedent without any legal or policy justification. *Id.*, pp 385-386, citing *Loucks v Bauman,* 356 Mich 514; 97 NW2d 321 (1959), and *Baldwin v Chrysler Corp,* 67 Mich App 61; 240 NW2d 266 (1976).

tion to [the] appeal and in support of Judge Mik-
ko's Decision." No oral argument was permitted or
presented before the appeal board.

Nevertheless, in its decision, the appeal board
modified the hearing referee's order and changed
the commencement date of the partial disability
benefits from 1977 to 1971. Even though the ques-
tion of benefits prior to 1977 had not been an issue
before the hearing referee and had not been raised
by cross-appeal, the board, concurrently with its
award of benefits for additional time periods prior
to 1977, held that the employer was barred from
applicability of the two-year-back rule. It cited
*Kleinschrodt* as the basis for finding that defen-
dant had waived the defense. We disagree.

Under the circumstances of this case, defendant
could not have appealed a ruling on the two-year-
back rule to the WCAB, because the decision of the
hearing referee was favorable to its position on
that rule. There was no reason to anticipate a
need to argue that issue prior to the determination
that Mr. Franks was entitled to additional bene-
fits. Although the majority in *Kleinschrodt* viewed
this defense as nonjurisdictional, there is no au-
thority for requiring it to be raised in a void in the
first responsive pleading or be waived. Compare
MCR 2.116(D)(1) and 2.116(D)(2). See *Piwowarski v
Detroit Sulphite Pulp & Paper Co,* 412 Mich 716,
727; 316 NW2d 719 (1982) (COLEMAN, C.J., *dissent-
ing*). We agree with the admonition of Justice
COLEMAN that it would be "a costly mistake to
extend the holding in *Kleinschrodt* beyond the
facts presented in that case." (The majority did not
reach this issue in its resolution of the case.)[27]

---

[27] The Court of Appeals has applied the rationale of the *Klein-
schrodt* majority to the two-year-back rule, holding that it is "akin to
a statute of limitations" and is waivable, not jurisdictional. *Kingery v
Ford Motor Co,* 116 Mich App 606, 615; 323 NW2d 318 (1982); *Howard*

In addition, defendant White Pine never stipulated or specified that the only issue before the appeal board was one other than the two-year-back rule, as the defendant had in *Kleinschrodt.* For these reasons, we conclude that under the facts and circumstances of this case, the holding that this defense was waived was clearly erroneous.

### D. *Conclusion*

We hold that under the provisions of § 358 of 1980 PA 357, MCL 418.358; MSA 17.237(358) unemployment compensation paid for weekly periods before the January 1, 1982 effective date of the 1980 amendment is not deductible from workers' compensation benefits payable for the identical pre-January, 1982 periods, but weekly payments of workers' compensation that become due on or after January 1, 1982, are to be reduced by unemployment compensation benefits paid or payable for the same periods, although the worker was injured before January 1, 1982.

We also hold that under the circumstances of this case, where the decision on review before the Workers' Compensation Appeal Board did not involve benefits for any time period which would require invoking the two-year-back rule, and the claimant had not filed an application for review or cross-appeal seeking benefits for a longer period, the holding that the defense had been waived was clearly erroneous.

The judgment of the Court of Appeals is reversed, and the case is remanded to the Workers' Compensation Appeal Board for further proceed-

---

*v General Motors Corp,* 132 Mich App 639; 348 NW2d 286 (1984), *remanded on other grounds* 419 Mich 948 (1984). As this issue need not be decided in this case, we intimate no opinion as to the correctness of these decisions. We hold merely that, assuming *arguendo* that the two-year-back rule is waivable, the Court of Appeals ruling that it was waived in this case is clearly erroneous.

ings and entry of judgment consistent with this opinion.

We find defendant's remaining challenge to the test applied by the appeal board in determining disability to be without merit and affirm the judgment of the Court of Appeals on that issue.

WILLIAMS, C.J., and LEVIN, BRICKLEY, and CAVANAGH, JJ., concurred with BOYLE, J.

RYAN and RILEY, JJ., concurred with BOYLE, J., in *Chambers* and *Gomez,* but concurred only in the result in *Franks.*

LEVIN, J. (*concurring*). I have signed the opinion of the Court because I agree with the Court's conclusions and with the general direction of the reasoning. I write separately because I am not in full agreement with the analysis and reasoning regarding the application of the January 1, 1982 effective date of the workers' compensation reform packages enacted in 1980 and 1981.

I

Both the 1980[1] amendatory act and the 1981 amendatory act at issue in the instant case state that "[t]his amendatory act shall take effect January 1, 1982."[2] (Because this 1981 amendatory act

---

[1] 1980 PA 357, MCL 418.101 *et seq.;* MSA 17.237(101) *et seq.,* MCL 418.358; MSA 17.237(358).

The workers' compensation act was amended to provide that net weekly workers' compensation disability benefits "shall be reduced by 100% of the amount of benefits paid or payable to the injured employee under the Michigan employment security act," for identical periods of time and chargeable to the same employer.

[2] 1981 PA 203, MCL 418.354; MSA 17.237(354).

The workers' compensation act was amended to provide that "[t]he employer's obligation to pay or cause to be paid weekly benefits other than specific loss benefits" "shall be reduced" by

(i) "[f]ifty percent of the amount of the old-age insurance benefits received or being received under the social security act," and

was not given immediate effect, it did not become operative until March 31, 1982.)[3]

## A

In these cases, consolidated in this Court for argument on appeal, the workers, Franks, Chambers, and Gomez, were injured before the enactment of the 1980 and 1981 amendments. They claim, among other contentions, that the amendatory legislation was not intended to affect the rights of persons injured before the effective date of the 1980 and 1981 amendments.

## B

The 1981 amendatory act at issue in the instant case, concerning coordination of social security, pension, and retirement benefits, was one of a number of acts comprising the 1981 workers' compensation reform package.

In *Selk v Detroit Plastic Products (On Resubmission),* 419 Mich 32; 348 NW2d 652 (1984), this Court considered the provision of another act, also a part of the 1981 workers' compensation reform package, that increased the interest on unpaid compensation from five percent to twelve percent.[4] That act also provided, "This amendatory act shall take effect January 1, 1982." The majority in *Selk* held that the higher interest rate applied in all cases where the award remained unpaid on December 31, 1981, and, thus, necessarily to all awards that were paid on or after the January 1, 1982 effective date, with the result that although a

(ii) "[t]he after-tax amount of the payments received or being received under a self-insurance plan, a wage continuation plan, or under a disability insurance policy provided by the same employer" to the extent that employer contributions funded the pension or retirement payments, for the "same time period."

[3] Acts that are not given immediate effect become effective ninety days after the adjournment of the Legislature. Const 1963, art 4, § 27.

[4] 1981 PA 194, MCL 418.801; MSA 17.237(801).

worker's injury preceded January 1, 1982, the increase in interest rate was fully retroactive in every such case that remained pending on the January 1, 1982 effective date. Weekly disability payments that became due, in the consolidated cases then before the Court, in three- and five-year periods before the January 1 effective date, and even earlier in some other cases that were awaiting the *Selk* decision, thus bore interest, as a result of the *Selk* decision, at twelve percent from the pre-January 1, 1982 dates of disability.

I dissented and expressed the view that interest accrued at the higher rate on and after, but not before, the January 1, 1982 effective date, without regard to the date of payment. I read the effective date as evidencing a legislative intent that weekly payments of workers' compensation that became due before January 1, 1982, on account of injuries that occurred before that date—unpaid on January 1, 1982, because the employer disputed liability or for other reasons—bear interest at five percent until that date and bear interest at twelve percent on and after that date.[5]

II

I agree with the majority that the Legislature did not intend that the applicability of the 1980 amendatory act or of the 1981 amendatory act at issue in the instant case depend on the date of injury, and agree with their conclusions that

— in *Chambers* and *Gomez,* weekly payments of workers' compensation that become due on or after March

[5] *Selk v Detroit Plastic Products (On Resubmission), supra* (LEVIN, J., *dissenting*).

31, 1982,[6] are to be reduced by fifty percent of social security payments and the proportion of pension and retirement payments funded by the employer thereafter received or being received for the same periods although the worker was injured before January 1, 1982,

and

— in *Franks,* weekly payments of workers' compensation that become due on or after January 1, 1982, are to be reduced by unemployment compensation benefits paid or payable for the same periods although the worker was injured before January 1, 1982, but unemployment compensation paid for weekly periods before the January 1, 1982 effective date of the 1980 amendment is not deductible from workers' compensation benefits that remain unpaid, payable for the same pre-January, 1982 periods.

I agree with those conclusions, however, on the basis, set forth in dissent in *Selk,* that the effective date stated in the amendatory act is determinative.

## A

The legislative purpose in providing a specific future effective date was to indicate when the provisions of the amendatory acts providing for coordination of benefits would take effect.

In stating, in both the 1980 amendatory act and this 1981 reform act, that "[t]his amendatory act shall take effect January 1, 1982," the Legislature indicated its intention that the coordination provisions of those acts would become effective on January 1, 1982. (The 1981 act, respecting social security and pension and retirement benefits, was not given immediate effect and therefore did not become operative until March 31, 1982.)

---

[6] General Motors does not in these cases seek to have the amendment given effect as of January 1, 1982.

The subject matter of the amendatory acts is the coordination of workers' compensation benefits with unemployment compensation, social security, pension, and retirement benefits; the purpose of the amendatory acts is to provide for such coordination.

The purpose of the January 1, 1982 effective dates was to state when the Legislature desired that the coordination would become effective. The words "[t]his amendatory act shall take effect January 1, 1982" thus mean that the coordination shall become effective on January 1, 1982, and not before that date. Accordingly, an employer may not coordinate benefits as to weekly payment periods before January 1, 1982, but coordination is required beginning January 1, 1982, as to each weekly payment becoming due on or after that date, although the worker was injured before that date.

B

In concluding that the Legislature did not intend that the 1980 amendatory legislation would affect persons who were injured before January 1, 1982, the Court of Appeals relied, in *Franks,* on the statement in *Tarnow v Railway Express Agency,* 331 Mich 558; 50 NW2d 318 (1951), that the law in effect at the time of injury controls an employee's right to workers' compensation benefits. The Court of Appeals also relied on general expressions in *Hughes v Judges' Retirement Bd,* 407 Mich 75, 85; 282 NW2d 160 (1979), *Ballog v Knight Newspapers, Inc,* 381 Mich 527, 533-534; 164 NW2d 19 (1969), and *Hansen-Snyder Co v General Motors Corp,* 371 Mich 480; 124 NW2d 286 (1963), stating the general rule that legislation is ordinarily not given retroactive effect. The acts there under consideration, however, did not have

specific effective dates.[7] The absence of specific effective dates left the question of how those acts might affect events that had already occurred open to judicial construction. The 1980 amendatory act and this 1981 amendatory act, however, have a specific effective date, January 1, 1982.

## C

Workers' compensation benefits are payable weekly, and are geared to weekly wage loss. The nature of workers' compensation is that events after an award of benefits may change the extent of an entitlement to benefits. A disabled worker may cease to be disabled or obtain gainful employment. The number of the worker's dependents may change. The right to receive workers' compensation benefits thus generally depends on one's status, week by week, and is subject to change during any week.

A workers' compensation award, thus, differs from a judgment in a tort action where, when the plaintiff prevails, a lump-sum award is fixed and payable without regard to whether predictions concerning the severity or longevity of the claimed damages are borne out by subsequent experience.

## D

I agree with the signers of the opinion of the Court that there is no basis in the language of the 1980 or 1981 reform legislation or in its history that would justify the conclusion that the Legislature, which expressly stated that these amendments were all to become effective on January 1, 1982, did not intend that they would be effective as

[7] See 1943 PA 245 considered in *Tarnow v Railway Express Agency, supra,* 1960 PA 75 considered in *Hansen-Snyder Co v General Motors Corp, supra,* 1974 PA 337 considered in *Hughes v Judges' Retirement Bd, supra,* p 85, and 1965 PA 240 considered in *Ballog v Knight Newspapers, Inc, supra.*

to all weekly payments of workers' compensation becoming due on or after that effective date even though the worker was injured before that date. The Legislature apparently intended, without regard to whether the worker was injured on or after or before the January 1, 1982 effective date of the 1980 and 1981 reform legislation, that there be coordination of weekly workers' compensation benefits an employer is obliged to "pay or cause to be paid," and of weekly benefits "payable," "paid or payable," "received or being received"[8] on or after that date with unemployment compensation, social security, and pension and retirement benefits payable for the same period.[9]

RILEY J. (*concurring*). I concur in the result reached by the majority in *Franks v White Pine Copper Division* concerning the nonapplicability of the two-year-back rule, however, I do so for a different reason.

In *Kleinschrodt v General Motors Corp*, 402 Mich 381, 384; 263 NW2d 246 (1978), this Court held "that the one-year-back provision [MCL 418.833; MSA 17.237(833)] is a defense, akin to the statute of limitations, which can be waived. It is not jurisdictional." Also in *Kleinschrodt*, Justice RYAN concurred with Justice COLEMAN in dissent, viewing the one-year-back provision as a limitation on the authority of the Workers' Compensation Appeal Board to order the payment of benefits. The dissenting opinion further stated that the majority had overruled prior Michigan case law on unconvincing legal and policy grounds, citing *Loucks v Bauman,* 356 Mich 514; 97 NW2d 321

---

[8] See ns 1 and 2.

[9] See *Lahti v Fosterling,* 357 Mich 578; 99 NW2d 490 (1959).

(1959), and *Baldwin v Chrysler Corp,* 67 Mich App
61; 240 NW2d 266 (1976). 402 Mich 384-386 (COLE-
MAN, J., *dissenting*).

The majority opinion in *Franks* discusses the
*Kleinschrodt* ruling regarding the one-year-back
provision pursuant to the Court of Appeals opinion
in *Franks v White Pine Copper Division,* 122 Mich
App 177, 187; 332 NW2d 447 (1982), applying the
*Kleinschrodt* holding in determining that defen-
dant's challenge to the appeal board's decision had
been waived, but determines that it is unnecessary
for this Court to decide whether the rationale of
the *Kleinschrodt* majority should be applied to the
two-year-back rule which was raised in the *Franks*
case. *Ante,* pp 676-677, n 27.[1] Rather, the majority
states that "assuming *arguendo* that the two-year-
back rule is waivable, the Court of Appeals ruling
that it was waived in this case is clearly errone-
ous." *Id.* This conclusion was reached on the basis
of the fact that the two-year-back provision did not
have to be raised by defendant White Pine because
disability benefits were not ordered by the hearing
referee covering any time period more than two
years prior to the time Mr. Franks filed his appli-
cation for a hearing with the bureau. Conse-
quently, there was no reason for the defendant to
raise the "defense" because the two-year-back rule
was not an issue on appeal to the Workers' Com-
pensation Appeal Board. The majority also notes
that White Pine did not stipulate that the only
issue before the Workers' Compensation Appeal
Board was one other than the two-year-back rule,

---

[1] The majority also cites other cases in n 27 that have applied the
*Kleinschrodt* rationale to the two-year-back rule including *Howard v
General Motors Corp,* 132 Mich App 639; 348 NW2d 286 (1984),
*remanded on other grounds* 419 Mich 948 (1984), and *Kingery v Ford
Motor Co,* 116 Mich App 606; 323 NW2d 318 (1982).

as the defendant had in *Kleinschrodt. Ante,* pp
676-677.[2]

While I believe the majority's reasoning is le-
gally sound under the facts and circumstances
presented in *Franks,* I also believe the remedial
effect the two-year-back rule has on workers' dis-
ability compensation benefits is ripe for review in
*Franks* and should be decided by this Court.

The two-year-back provision is set forth in MCL
418.381(2); MSA 17.237(381)(2):

> If any compensation is sought under this act,
> payment *shall not be made* for any period of time
> earlier than 2 years immediately preceding the
> date on which the employee filed an application
> for a hearing with the bureau. [Emphasis added.]

I believe this language "shall not be made"
clearly indicates a legislative intent to limit the
authority of the hearing referee and the Workers'
Compensation Appeal Board in awarding the pay-
ment of benefits.[3]

---

[2] The defendant in *Kleinschrodt* stipulated that the only issue on
appeal was whether or not the plaintiff's right hand was useless for
any type of work. Thus, the defendant in *Kleinschrodt* did not raise
the one-year-back rule as an issue on appeal. *Kleinschrodt, supra,*
384. While the majority erroneously associates both *Kleinschrodt* and
*Franks* to the two-year-back rule on this point, I believe for the
purposes of the majority opinion, the difference is irrelevant.

[3] I would also apply the ruling in this concurrence concerning the
two-year-back provision to the one-year-back provision. While I realize
the one-year-back and two-year-back provisions are applicable to
different factual situations occurring in workers' disability compensa-
tion cases, I also believe for the purposes of this opinion that they can
be considered synonymously. The one-year-back provision is set forth
in part in MCL 418.833(1); MSA 17.237(833)(1).

"If payment of compensation is made, other than medical expenses,
and an application for further compensation is later filed with the
bureau, *no compensation shall be ordered* for any period which is
more than 1 year prior to the date of filing of such application."
(Emphasis added.)

The language "no compensation shall be ordered" evidences a
legislative intent to limit the authority of the hearing referee and

Therefore, I would reverse the judgment of the Court of Appeals in *Franks* and remand that case to the Workers' Compensation Appeal Board pursuant to the direction that the two-year-back rule limits the authority of the hearing referee and the Workers' Compensation Appeal Board to order benefits, rather than the majority's ruling that the particular facts and circumstances of *Franks* preclude the necessity of the defendant from raising the two-year-back provision before the Workers' Compensation Appeal Board.

RYAN, J., concurred with RILEY, J.

CAVANAGH, J., took no part in the decision of *Franks.*

Workers' Compensation Appeal Board in ordering benefits. Therefore, I am in agreement with Justice COLEMAN's dissent in *Kleinschrodt, supra,* and would extend her reasoning to include proceedings before the hearing referee.